DATASCOPE CORP., Plaintiff–
Appellant,

v.

SMEC, INC., Defendant,

and

Peter Schiff, Appellee.

No. 91–1407.

United States Court of Appeals,
Federal Circuit.

April 29, 1992.

Stevan J. Bosses, Fitzpatrick, Cella, Harper & Scinto, New York City, argued, for plaintiff-appellant.

William J. Brennan, III, Smith, Stratton, Wise, Heher & Brennan, Princeton, N.J., argued, for appellee. With him on the brief, was Thomas E. Hastings.

Before ARCHER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PLAGER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The sole question in this appeal from the United States District Court for the District of New Jersey is whether that court abused its discretion in denying the plaintiff in this patent infringement suit leave to amend its complaint to add as a defendant the president and principal stockholder of the defendant corporation. The motion was filed almost nine years after the plaintiff instituted its original suit, and following a liability and a damages trial, two appeals to this court and a further damages hearing on remand after the second appeal. The district court denied leave to amend because the plaintiff had unduly delayed filing its motion and grant of the motion would unduly prejudice the person sought to be added as a defendant. We hold that the district court did not abuse its discretion in refusing to permit amendment, and therefore affirm.

I.

The appellant, Datascope Corp. (Datascope), filed the present suit in December 1981 against SMEC, Inc. The complaint

alleged that SMEC had infringed Datascope's U.S. Patent No. 4,261,339 ('339 patent) relating to intra-aortic inflatable balloon catheters. In August 1982, Datascope moved to amend its complaint to add a count charging infringement of U.S. Patent No. 4,327,709 ('709 patent), which motion the district court granted in December 1982.

The district court bifurcated the trial into liability and damage phases. After a bench trial, the district court held in September 1984 that the '339 patent had not been proved invalid and that SMEC had infringed it, but that the '709 patent was invalid. *Datascope Corp. v. SMEC, Inc.*, 594 F.Supp. 1306, 1314, 224 USPQ 694, 701 (D.N.J.1984). On appeal, this court affirmed the district court's ruling regarding the '339 patent, but reversed the holding that the '709 patent was invalid. *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 323–24, 326–27, 227 USPQ 838, 840–41, 843–44 (Fed.Cir.1985).

Following a damages trial in May and June 1987, the district court in January 1988 (1) awarded damages of approximately $113,000, based upon a reasonable royalty, and rejected Datascope's contention that the proper measure of damages was lost profits, and (2) held that the infringement was not willful. *Datascope Corp. v. SMEC, Inc.*, 678 F.Supp. 457, 461–65, 5 USPQ2d 1963, 1967–70 (D.N.J.1988). On appeal, this court held that the proper measure of damages was lost profits rather than a reasonable royalty, and that the infringement was willful. *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 11 USPQ2d 1321 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990). We remanded the case "for calculation of the amount of lost profits on domestic infringing sales, determination of enhanced damages and attorney fees, and such other proceedings as are consistent with this opinion." *Id.* at 829, 11 USPQ2d at 1328.

In January 1990, the district court awarded damages of $3,277,963.96. On August 3, 1990, the court awarded prejudg-ment interest of $1,394,666, producing a total award of $4,672,629.96.

Ten days after the court entered its final judgment, SMEC filed a petition for reorganization under Chapter 11 of the Bankruptcy Act. Two months later, Datascope filed a motion to amend its complaint to add the appellee, Peter Schiff, as a defendant. Schiff was the president and principal stockholder of SMEC and, according to Datascope, SMEC "was truly a 'one man show', founded, controlled, managed, and operated by Peter Schiff," and Schiff "was the backbone of SMEC's defense to both the liability and damages phases of this litigation, including serving as SMEC's principle [sic] defense witness at both trials."

The district court denied the motion to amend for two reasons: (1) Datascope unduly delayed seeking to add Schiff as a party because "there is no explanation for plaintiff's failure to join Schiff at the time it suspected SMEC had ceased operations and therefore would not be able to satisfy a large judgment"; and (2) "even were the court to find that there was no undue delay, Datascope's failure to add Schiff earlier has operated undue prejudice on Schiff. Schiff has not had, and will not have, an opportunity to contest the claim which Datascope proposes to assert against him individually, as no claim was made at any time during the protracted life of this lawsuit. Datascope's contention that trying SMEC was tantamount to trying Schiff is not valid."

## II.

 Two provisions of the Federal Rules of Civil Procedure govern the amendment of pleadings. Rule 15(a) provides, in pertinent part, that:

> ... a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Rule 21 provides in pertinent part:

> [p]arties may be dropped or added by order of the court on motion of any party

or of its own initiative at any stage of the action and on such terms as are just.

The grant or denial of leave to amend the complaint is within the discretion of the district court, *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971), and will be reversed only for an abuse of discretion. *Cornell & Co. v. Occupational Safety and Health Review Comm'n,* 573 F.2d 820, 823 (3rd Cir.1978). In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should as the rules require, be "freely given."

*Id.* at 182, 83 S.Ct. at 230.

■ "In review of an order denying a motion to amend, a subject which is not unique to patent law, we look to the law of the regional circuit." *Kalman v. Berlyn Corp.,* 914 F.2d 1473, 1480, 16 USPQ2d 1093, 1098 (Fed.Cir.1990). Here we therefore look to the decisions of the Third Circuit to ascertain the standard for determining whether the district court abused its discretion in denying Datascope leave to amend.

Although delay itself is an insufficient ground to deny amendment, if the delay is "undue" the district court may refuse to permit amendment. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *see also Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3rd Cir. 1984) ("at some point, delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party"), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

■ In this case, the district court found that Datascope's delay in seeking to amend its complaint was "undue" because long before it took that action Datascope was, or should have been, aware that SMEC's financial situation created doubts about the ability of the defendant to satisfy a large judgment. The following evidence in the record supports that conclusion.

During this litigation, SMEC furnished Datascope with its financial statements that showed that, as of May 31, 1984, SMEC had a net worth of $793,201.14 and a net income of $76,870.09 and as of May 31, 1985, a net worth of $487,891.53 and a net loss of $305,309.61. The district court stated that "[b]ecause SMEC was enjoined from selling its infringing intraortic balloon in 1984, had stopped selling intraortic balloons in 1985 and, in fact, had stopped functioning as an operating business in 1985, SMEC's net worth never exceeded $793,201.14." Datascope does not challenge those findings. Moreover, in an affidavit submitted in support of its motion to amend the complaint, Datascope's attorney admitted that during the damages trial in May and June of 1987, Datascope learned that "SMEC as an entity apparently ceased selling" infringing products "by July 1985," which "suggested that SMEC was no longer an operating entity."

Thus, several years before it filed its motion to amend, Datascope had clear indication that SMEC's financial position and business had deteriorated to the point that it was doubtful that the defendant could pay a judgment of the size entered against it. Moreover, Datascope's counsel's affidavit supporting its motion to amend admitted that "[t]he facts disclosed through discovery and at the trials in this action amply demonstrate that during the period when SMEC is known to have been an operating entity, it was truly a 'one man show,' founded, controlled, managed and operated by Peter Schiff." Thus, Datascope had been aware for a number of years of Schiff's predominant role in SMEC, which was the basis for its attempt to hold him personally liable for the infringement. The possibility of seeking to amend the complaint was not novel for Datascope, which, eight months after it filed its original complaint, successfully sought to amend it to allege infringement of another patent.

Datascope responds that it was not until January 1990 that it knew it would be awarded a multimillion dollar judgment and not until August 1990 that the final judgment of more than $4 million dollars was entered, and that up to that time it had no reason to be concerned about SMEC's ability to satisfy the judgment. But Datascope must have known from the outset of this litigation that if it prevailed and recovered damages for lost profits, the judgment would far exceed the amount that SMEC appeared able to pay. Indeed, when the district court in January 1988 awarded Datascope damages of $113,000, Datascope successfully appealed on the ground that those damages were inadequate.

Datascope argues, however, that two other facts justified it in believing that SMEC's assets were adequate to pay whatever judgment Datascope ultimately might obtain against SMEC.

1. In July 1985, while the first appeal to this court was pending, Mansfield Scientific, Inc. ("Mansfield") moved this court for leave to file an amicus brief in support of SMEC's appeal. Mansfield stated that "[q]uite recently Mansfield Scientific became interested in SMEC's product line," that it had signed "a letter of intent to purchase (secured by substantial escrowed funds)," and that its interest as an amicus stemmed from its "imminent acquisition of the entire product line that has been sold by SMEC." Datascope asserts that it relied on the statement that the letter of intent was "secured by substantial escrowed funds" to show that even if SMEC had sold its business, it still would have "substantial" assets with which to satisfy any judgment against it. Datascope also states that its attempts to obtain information about the Mansfield transaction from SMEC through discovery were unsuccessful because the district court held that such discovery was premature.

2. In 1988, another company that was engaged in a business similar to that of SMEC and that was only slightly larger than SMEC, was sold for $8 million. This sale, according to Datascope, justified Datascope in concluding "that Mansfield paid at least enough to satisfy the $4.7 million judgment against SMEC."

Neither of these transactions, either separately or together, undermine or vitiate the district court's finding that Datascope's delay in seeking to amend its complaint was "undue." The precise details of the Mansfield transaction were not known to Datascope and the information regarding the transaction given in the motion for leave to file was vague and conclusory. Moreover, Datascope had no reason to assume that following the sale of SMEC's business, SMEC would retain the proceeds indefinitely rather than distribute them to its stockholders. The fact that another company similar in size to SMEC was sold a year or two later for $8 million was insufficient, in light of the other facts shown by the record, to justify Datascope's alleged belief that SMEC could satisfy the judgment Datascope hoped to obtain against it. The district court's finding of undue delay is not clearly erroneous.

Datascope relies here, as it did in the district court, on *Fromson v. Citiplate, Inc.*, 886 F.2d 1300, 12 USPQ2d 1299 (Fed. Cir.1989). In that patent infringement suit, prior to trial Fromson (the plaintiff) moved to add as defendants the two Cusumanos, "based on rumors of Citiplate's financial difficulties." *Id.* at 1301, 12 USPQ2d at 1300. The Cusumanos were the principal officers and the sole directors of Citiplate, and each owned 50 percent of the company. *Id.* at 1304, 12 USPQ2d at 1302. The district court, "relying on Citiplate's representation that it was in sound financial condition," denied the motion. *Id.* at 1301, 12 USPQ2d at 1300–01.

After trial, the district court held for the plaintiff and awarded damages of about $4 million. Six weeks later, Citiplate filed a voluntary bankruptcy petition. The district court then allowed Fromson "to amend his original complaint, adding the Cusumanos as defendants as of the date of the original pleading under Rule 15(c), Fed.R.Civ.P." *Id.* at 1302, 12 USPQ2d at 1301.

The Cusumanos appealed to this court, argued that the relation back of the amended complaint to the date of the original

filing was not in accord with Rule 15(c). This court rejected that contention, "find[ing] no reversible error in the district court's allowing Fromson's amendment adding the Cusumanos as defendants to relate back to the original pleading." *Id.* at 1304, 12 USPQ2d at 1303.

The critical distinction between *Fromson* and the present case is that in *Fromson* the district court permitted the amendment after trial, whereas here the district court denied it. In *Fromson*, the plaintiff had moved to add the individual defendants before trial, but the court denied the amendment because of Citiplate's "representation that it was in sound financial condition." *Id.* at 1301, 12 USPQ2d at 1301.

This court in *Fromson* did not determine the propriety of permitting the amendment, since the Cusumanos did not raise that issue; it held only that the relation back of the amended complaint complied with Rule 15(c). The fact that the district court in *Fromson* permitted the amendment of the complaint in the different circumstances of that case does not establish that the refusal of the district court to permit amendment in the present case was an abuse of discretion.

Datascope also relies on *Kalman.* There we held that the district court had abused its discretion in refusing to permit the plaintiff to amend its patent infringement complaint to add another plaintiff—a corporation in which the plaintiff and his brother were each 50 percent stockholders. 914 F.2d at 1480, 16 USPQ2d at 1098. That corporation was the sole licensed distributor of the commercial embodiment of the patented product. *Id.* at 1482, 16 USPQ2d at 1099. Plaintiff's complaint sought recovery of the lost profits of the corporation. *Id.* at 1477, 16 USPQ2d at 1096. Defendant consistently treated plaintiff and the corporation interchangeably, as a single entity. *Id.* at 1480, 16 USPQ2d at 1098. The amendment was requested after the conclusion of the damages trial, but before the damages were determined, to enable the plaintiff to recover what he believed to be the full amount of damages. *Id.* at 1477, 16 USPQ2d at 1096. The facts in that case were so different from those in the present case that *Kalman* provides no support for Datascope's claim that the district court abused its discretion in refusing to permit amendment.

Considering all the circumstances, we cannot say that the district court abused its discretion in denying Datascope's motion, made almost nine years after the complaint was filed, and after the case had been through two trials and two appeals and final judgment had been entered, to amend the complaint to name Schiff as a defendant.

The judgment of the district court is

AFFIRMED.