**OHIO CELLULAR PRODUCTS COR-PORATION, Plaintiff/Third Party Plaintiff–Appellant,**

**and**

**Donald E. Nelson, Third Party Defendant–Appellant,**

v.

**ADAMS USA, INC. and Apehead Man-ufacturing, Inc., Defendants/Third Party Plaintiffs–Appellees,**

v.

**All American Sports Corporation, Third Party Defendant.**

**No. 98–1448.**

United States Court of Appeals, Federal Circuit.

April 26, 1999.

Rehearing Denied; Suggestion for Rehearing En Banc Declined June 3, 1999.

Ernest R. Bazzana, Plunkett & Cooney, P.C., of Detroit, Michigan, argued for plaintiff/third party plaintiff-appellant and third party defendant.

Joel T. Beres, Wheat, Camoriano Smith & Beres, PLC, of Louisville, Kentucky, argued for defendant/third party plaintiff-appellees. With him on the brief were Jack A. Wheat, and Vance A. Smith. Of counsel was David W. Nagle, Jr.

Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

MICHEL, Circuit Judge.

Ohio Cellular Products Corporation ("Ohio Cellular") and Donald Nelson ("Nelson")[1] appeal from the decision of the United States District Court for the Northern District of Ohio, granting Adams USA, Inc. and Apehead Manufacturing, Inc.'s ("Defendants'") post-judgment motion for leave to amend their third-party complaint to add Nelson in his individual

---

1. The appellants, Ohio Cellular and Nelson, will be referred to collectively as "Nelson" except if inappropriate, because it was Nelson who was added as a party in the grant of the motion at issue on appeal.

capacity as a third-party defendant. *See Ohio Cellular Prods. Corp. v. Adams USA, Inc.*, No. 3:94–CV–7251 (N.D.Ohio Mar. 25, 1998). The court further granted Defendants' motion to amend a January 20, 1998 judgment awarding attorney fees to include Nelson as an additional party. This amended judgment made Nelson individually liable to pay the judgment along with Ohio Cellular, his corporate entity, the plaintiff in this infringement suit which was dismissed after the asserted patents were held invalid. *See id.* Nelson is the president and sole stockholder of Ohio Cellular. The January 20, 1998 judgment awarded a specific amount as attorney fees and costs to Defendants. A September 1997 reconsideration order had retained liability for fees in this case, found exceptional on February 12, 1997, based on inequitable conduct committed during prosecution of the application by Nelson himself. After the district court granted Defendants' motion to amend on March 25, 1998, Nelson moved to alter or amend that judgment, but his motion was denied on May 18, 1998. Thereafter, this appeal was timely filed. It was submitted for our decision following oral argument on February 3, 1999. Because we conclude that under the particular circumstances of this case the district court did not abuse its discretion in adding Nelson as a third-party defendant and amending the judgment quantifying the fee award to obligate Nelson individually after post-trial proceedings were concluded, we affirm.

## BACKGROUND

In May 1994, Ohio Cellular sued Defendants for infringement of U.S. Patent Nos. 5,273,702 ("the '702 patent") and 4,980,110 ("the '110 patent").[2] In October 1995, the asserted patents were found invalid for anticipation under 35 U.S.C. § 102(b) (1994). The infringement complaint was therefore dismissed. When Ohio Cellular appealed, we affirmed. *See Ohio Cellular Prods. v. Adams USA, Inc.*, 104 F.3d 376, 41 USPQ2d 1538 (Fed.Cir.1996) (table).

After the judgment of invalidity was affirmed, on February 12, 1997 the district court granted the Defendants' motion for attorney fees and costs on the basis that the applicant had engaged in inequitable conduct. Ohio Cellular's motion for reconsideration was denied on September 25, 1997, after an evidentiary hearing was held. The district court concluded that, during the prosecution of the '702 patent, Nelson, who denied it at the evidentiary hearing on the issue, had withheld material prior art from the United States Patent and Trademark Office with the intent to deceive.[3] The judgment that Ohio Cellular committed inequitable conduct is not here disputed. After judgment on liability for fees was entered, Defendants and Ohio Cellular attempted to negotiate the amount of the attorney fees. On October 13, 1997, three weeks after the fee liability decision was confirmed, in connection with the fee negotiations, Ohio Cellular's counsel sent a letter to Defendants' counsel, stating:

> I am writing to potentially save you some time. The fact is that if the attorney fee award exceeds a very limited amount, you will not collect it *because the company will be liquidated.* If you wish to discuss a resolution on a nominal basis, please let me know.

(Emphasis added). The negotiations were not successful. Two weeks after the letter

---

2. Apehead Manufacturing, Inc., an affiliate of Adams USA, Inc., was added as a party subsequent to the filing of the original complaint. All–American Sports Corp. was named as a third-party defendant in a counterclaim filed against it and Ohio Cellular by Adams USA, Inc. Only the prosecution of the '702 patent is at issue on appeal.

3. Although Nelson was a co-inventor of the '702 patent with Jim Lammy, Nelson alone was responsible for the inequitable conduct. There is no evidence before us, moreover, that the attorney who prosecuted the application was aware of the undisclosed material prior art. Instead, it appears that Nelson withheld the prior art from his attorney and thus from the Patent Office.

was sent, Defendants submitted a fee petition and bill of costs to the district court. The district court finally awarded Defendants $178,888.51 on January 20, 1998.

On February 3, 1998, two weeks after the amount of fees was determined by the district court, Defendants filed the motion that is the subject of this appeal. Defendants sought to add Nelson as a third-party defendant to subject him to individual liability for fees because in light of the letter they feared that they would be unable to collect most or all of the fee award if only Ohio Cellular remained liable. Nelson, as an inventor of the '702 patent and president and sole shareholder of Ohio Cellular,[4] was intimately involved in the prosecution of the '702 patent and his conduct was the sole basis for the district court's conclusion that Ohio Cellular committed inequitable conduct. *See, e.g., Ohio Cellular Prods. Corp. v. Adams USA, Inc.,* No. 3:94–CV–7251, slip op. at 8 (N.D.Ohio Sept. 25, 1997) ("[T]he Court finds that Donald Nelson knew [of the prior art]. . . . Nelson did not disclose that information to the PTO . . ., although he knew the information was material. The Court finds further that Nelson's conduct manifests a sufficiently culpable state of mind to warrant a determination that it resulted from an intent to mislead the PTO.").

In its decision allowing Nelson to be added as a party, the district court determined that Nelson failed to establish undue delay or undue prejudice, either or both of which would counsel against adding him as a party after entry of the fee liability judgment. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (stating that leave to amend should be freely given in the absence of proof by the non-movant of such factors as "undue delay, bad faith or dilatory motive" and "undue prejudice to the opposing party"). The district court noted its understanding that delay alone is an insufficient

ground to deny a motion to amend, but that delay may become "undue" if the opposing party is prejudiced by the delay. To determine whether Nelson would suffer undue delay or prejudice if the motion were granted, the district court considered and discussed the facts of the case in view of the factors described in *Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 1303–04, 12 USPQ2d 1299, 1302 (Fed.Cir.1989). These factors include: "(1) whether Defendants' claim against Nelson arises out of the same conduct set forth in the original pleadings; (2) whether Nelson had notice sufficient to avoid prejudice to his defense and should have known that the action could have been brought against him; and (3) whether Nelson could be personally liable because he personally participated in or directed the wrongdoing that led to the corporation's liability." *Ohio Cellular,* slip op. at 4 (Mar. 25, 1998) (granting motion to amend).

With respect to the first *Fromson* factor, the district court made the following findings:

> In this case, there is no dispute that Defendants' claim against Nelson arises out of the same conduct set forth in the original pleadings—inequitable conduct before the PTO. Indeed, the Court's finding that the Plaintiff corporation [Ohio Cellular] had engaged in inequitable conduct before the PTO was based on a factual determination that Nelson had intentionally failed to disclose a material piece of prior art to the PTO. Nelson personally claimed to be the inventor of the process for which he sought and obtained the patents that were subsequently invalidated by this Court. Nelson is the president and sole shareholder of the Plaintiff corporation. The evidence is clear that Nelson was personally involved in all aspects of the Plaintiff corporation's operations, includ-

---

4. Nelson sold Ohio Cellular to BSN Corp. during the prosecution of the applications that issued as the '702 and '110 patents. After the patents issued, Nelson re-acquired

Ohio Cellular and it exclusively licensed the '702 and '110 patents from All American Sports Corp., another third-party defendant which owned the patents.

ing the prosecution of the invalid patents and the filing of the instant lawsuit. *Id.* Thus, the district court found that the first factor weighed against finding prejudice to Nelson.

With respect to the second factor, the district court concluded that there was not "any dispute that Nelson had notice sufficient to avoid prejudice to his defense and should have known that the action could have been brought against him." *Id.* at 5. In coming to this conclusion, the district court stated:

> The notice requirement is satisfied if there is a sufficient "identity of interest" between the original defendant and the newly added defendant, so that the institution of an action against one serves to provide notice of the litigation to the other. *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir.1998); *Fromson*, 886 F.2d at 1304; *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102–03 (1st Cir.1979). Nelson is the president and sole shareholder of the plaintiff corporation; thus, the identity of interest between the two parties is near-complete. Nelson had every reason to believe from the moment that Plaintiff corporation instituted this action that every penny the corporation spent would be a penny out of his own pocket. Further, Nelson has been actually aware of and involved in this litigation from its outset; he was the motivating force behind the institution of the lawsuit. He has diligently— even fiercely—acted to protect his interests at every stage of the proceedings.

*Id.* The district court therefore found that the second factor weighed against a conclusion that Nelson would be unduly prejudiced by the amendment.

As to the third factor, the district court found as follows:

> Finally, Nelson was on notice that Defendants' claim could have been brought against him personally, and that he might personally be liable for the Plaintiff corporation's tortious conduct. It is well accepted that the officers of a cor-

poration are personally liable for the corporation's torts committed in violation of the patent laws if they "personally took part in the commission of the tort or specifically directed other officers, agents or employees of the corporation to commit the tortious act." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed.Cir.1986); *accord Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed.Cir.1996); *Fromson*, 886 F.2d at 1304; *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed.Cir.1988). In this case, Nelson was personally responsible for the tortious conduct that led to the Plaintiff corporation's liability. Therefore, he is subject to personal liability for that conduct.

*Id.* Thus, the district court discerned that all three factors weighed against a finding that Nelson would suffer undue prejudice if added as a party, even though the motion to amend was filed over four months after the fee liability judgment was entered and two weeks after the amount of the fee awards was determined. Accordingly, the district court granted Defendants' motion. This appeal was then timely filed by Nelson. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

■ The sole issue before us is whether on this record the district court abused its discretion in granting Defendants' belated motion to add Nelson as to the fee award. *See Granus v. North Am. Philips Lighting Corp.*, 821 F.2d 1253, 1256 (6th Cir.1987) ("We review trial courts' disposition of motions to amend only for abuse of discretion. . . .").

Nelson argues for a per se rule that, because he was not held liable individually on the merits of the motion for attorney fees in the September 25, 1997 decision, he cannot be held responsible individually for paying the fee award quantified the following January. Such a "prohibition against assessing attorney fees against a non-par-

ty," *Appellants' Brief* at 16, he seeks to fashion from language in the Supreme Court's decision in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *Graham,* however, was a civil rights case where the Supreme Court held that a government employer cannot be later joined in a lawsuit and held vicariously liable for a fee award based on torts committed by governmental employees who, acting contrary to policy, deprived citizens of their constitutional rights. *See id.* at 167–70, 105 S.Ct. 3099. The government was a stranger to the lawsuit and the acts on the basis of which it was brought and the fees awarded. Thus, *Graham* hardly can stand for the proposition that the individual who actually committed the wrongdoing cannot be held liable for a fee award in cases where a fee award is warranted, as Nelson does not dispute it is here. Nor can *Graham* lend support to the argument of Nelson that just because he was not named in the suit or the motion for fees, and for no other reason, he cannot later be liable for fees. In this case, it is undisputed on appeal that Nelson personally committed the acts of inequitable conduct which were the basis for the fee award, and provided testimony regarding those acts as a witness at an evidentiary hearing. Moreover, as sole shareholder and president Nelson could control the litigation and indeed was found to have personally supervised it, including the inequitable conduct hearing. In *Graham,* by sharp contrast, the government itself did not commit or condone any wrongdoing, yet the plaintiffs sought the recovery of fees from it. The heart of the issue in *Graham* was whether the government could be held vicariously liable for fees awarded on the basis of acts of its individual employees when they are acting outside the scope of their lawful duties—an issue most definitely not present here.

■ Here, the district court awarded attorney fees pursuant to 35 U.S.C. § 285 (1994), which provides for a discretionary award of fees in a patent infringement case found to be "exceptional." It is settled that a case may be found exceptional when the patent applicant has committed inequitable conduct. *See Amsted Indus., Inc. v. Buckeye Steel Castings, Co.,* 23 F.3d 374, 376, 30 USPQ2d 1470, 1472 (Fed. Cir.1994) ("Among the types of conduct which can form a basis for finding a case exceptional are ... inequitable conduct before the P.T.O ....") (citation omitted). Because Nelson does not here contest the holding of inequitable conduct, which the district court relied on as the sole basis for finding the case exceptional and thus for awarding attorney fees, the only remaining issue is whether Nelson was properly added as a third-party defendant and made personally liable for the February 12, 1997 fee judgment, upheld on reconsideration on September 25, 1997, quantified on January 20, 1998.

■ Rather than being governed by *Graham,* this case falls into a broad category in which one party seeks to amend its complaint to add an additional party pursuant to Rule 15. *See* Fed.R.Civ.P. 15(a) (stating that leave to amend should be freely granted). Although here we are presented with the uncommon situation where an individual is sought to be added as a party after entry of judgment, here of liability for an award of fees, the district court properly concluded that it may grant such leave to amend, given appropriate circumstances. *See Ohio Cellular,* slip op. at 3 (Mar. 25, 1998) (citing *Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 12 USPQ2d 1299 (Fed.Cir.1989), and *Kalman v. Berlyn Corp.,* 914 F.2d 1473, 16 USPQ2d 1093 (Fed.Cir.1990)). It concluded that such circumstances were present here. We agree.

■ In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court addressed the relevant considerations involved in deciding motions to amend pursuant to Rule 15:

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182, 83 S.Ct. 227. Under subsequent Sixth Circuit case law, which governs this case, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (citations omitted). Although "undue delay" is a proper consideration under *Foman*, "delay by itself is not sufficient to deny a motion to amend." *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir.1990).[5]

■ The district court properly focused its inquiry on whether Nelson would be unduly prejudiced if Defendants' post-judgment motion to amend pursuant to Rule 15 were granted, measured, as the district court did, according to the factors discussed in *Fromson*.[6] After analyzing these *Fromson* factors, the district court concluded that Nelson would not suffer

undue prejudice if added as a party because, *inter alia:* (1) Defendants' fee claim against Nelson arose out of the very same inequitable conduct attributed to Nelson himself as set forth in the original pleadings; (2) Nelson was not prejudiced by a lack of notice due to his identity of interest with Ohio Cellular as its president, sole shareholder, effective controller of the litigation, inventor of the invention that was the subject matter of the '702 patent, co-applicant, and as a witness at the hearing on inequitable conduct; and (3) Nelson must be deemed on notice that the fee award claim could have been brought against him personally because, in his capacity as corporate president, he himself committed the inequitable conduct that became the basis for the fee award and totally controlled the corporation that was the original party, as well as the litigation over this very issue.

Considering all the circumstances of record here, we discern no abuse of discretion in the district court's grant of Defendants' motion to amend and no clear error in the district court's factual findings. Our review of its application of the *Fromson* factors shows they were duly determined and adequately support the district court's

---

**5.** Although *Foman* and other cases refer to undue prejudice, which implies a lack of notice to the party sought to be added, the cases do not separately address due process as a bar to amendment, presumably because due process requirements are met if the requirements of Rule 15 are met and no undue prejudice is shown. *See, e.g., Foman*, 371 U.S. at 182, 83 S.Ct. 227 (no explicit reference to or analysis of due process considerations); *General Elec.*, 916 F.2d at 1130 (concluding that no undue prejudice was shown where "General Electric simply does not argue that it would have done anything differently had the defense been presented [earlier]," without addressing due process explicitly); *Fromson*, 886 F.2d at 1304, 12 USPQ2d at 1302 (finding that individuals had notice because they "should have known all along" that they could be added as parties, without addressing due process explicitly).

**6.** It is important to note that Defendants were not required to "pierce the corporate veil" in order to add Nelson as a party. "In general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong. This general rule 'does not depend on the same grounds as piercing the corporate veil,'...." *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1411, 38 USPQ2d 1860, 1861–62 (Fed. Cir.1996) (citations omitted); *see also Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579, 1 USPQ2d 1081, 1090 (Fed. Cir.1986) ("[O]fficers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort...."). However, the fact that piercing the corporate veil is not required does not render Nelson's status as president and sole shareholder any less relevant for purposes of determining whether the motion to amend should have been granted. *See Fromson*, 886 F.2d at 1304, 12 USPQ2d at 1303–04 (relying on the individuals' status as officers of the corporation in allowing amendment pursuant to Rule 15 without any discussion of piercing the corporate veil).

exercise of its discretion.[7] First, there is no dispute that the conduct before the Patent Office giving rise to the claim for attorney fees is indeed the very same conduct that forms the basis for naming Nelson as a third-party defendant and for holding him personally liable for attorney fees: his own acts of inequitable conduct. Second, Nelson had timely and sufficient notice to avoid prejudice to his defense because Ohio Cellular had a nearly identical interest in the litigation over liability for fees as Nelson, due to his role as its president and sole shareholder and the patent applicant and a witness on inequitable conduct. Indeed, as president and sole shareholder of Ohio Cellular Nelson could control and did control litigation decisions made on behalf of Ohio Cellular, including decisions made during the litigation of both the motion for attorney fees and the later motion that quantified the fee·award. Finally, as the person solely responsible for the inequitable conduct and as a president and sole shareholder of Ohio Cellular, Nelson should have known he could be held personally liable. *See Hughes v. Novi Am., Inc.*, 724 F.2d 122, 125–26, 220 USPQ 707, 710 (Fed.Cir.1984) (holding the inventor, former president and majority shareholder of assignee of patents liable for attorney fees for his own inequitable conduct); *Fletcher Cyclopedia of the Law of Private Corporations* § 1143 (1994) ("A corporate officer or agent who commits fraud is personally liable to a person injured by the fraud. In other words, an officer of a corporation, actively participating in the fraud practiced by it, cannot escape personal liability on the ground the

officer was acting for the corporation. . . . *The corporation also may be liable, but the individual is not thereby relieved of his or her own responsibility.*" (emphasis added)).

Nelson may also be fairly associated with the October 13 letter, which threatened to nullify the district court's September 25 fee liability judgment by liquidating the corporation to frustrate payment of the fee judgment. That letter, sent to Defendants' counsel three weeks after the fee liability decision was confirmed on reconsideration, stated:

I am writing to potentially save you some time. The fact is that if the attorney fee award exceeds a very limited amount, you will not collect it *because the company will be liquidated.* If you wish to discuss a resolution on a nominal basis, please let me know.

(Emphasis added). Although the letter was signed by Ohio Cellular's counsel, the corporation could hardly be liquidated without the consent and participation of its sole shareholder and president, Nelson. *See Ohio Cellular Prods. Corp. v. Adams USA, Inc.*, No. 3:94–CV–7251, slip op. at 2 (N.D.Ohio May 18, 1998) ("In connection with the fee negotiations, *Nelson informed Defendants* that he would liquidate [Ohio Cellular] to avoid paying anything more than a nominal amount of attorney fees." (emphasis added)). At the very least Nelson must have known about the letter and could have rescinded it. Nelson does not argue that Defendants should have known of the potential liquidation of Ohio Cellular before receiving the letter. And once the

---

7. Indeed, the facts here are similar to those in *Fromson*, where Fromson sought to amend his complaint against a corporation after trial by adding two individuals and to hold them personally liable for attorney fees awarded to Fromson previously. Fromson sought to add the individuals because he belatedly learned of reason to fear that Citiplate, a corporation and the sole original defendant, was no longer solvent. The individuals in question were senior corporate officials of Citiplate, who together owned fifty percent of the company and held the most important offices in the

company. The district court in *Fromson* granted the motion to amend, basing its decision on application to the facts there of the same factors applied by the district court here. *See Fromson v. Citiplate, Inc.*, 10 USPQ2d 1785, 1786–87, *aff'd*, 886 F.2d 1300, 12 U.S.P.Q.2d 1299 (Fed.Cir.1989). We affirmed there; we must likewise do so here. In fact, this case is even clearer because Nelson owned one hundred percent of the shares and held the very top position in the corporation.

letter was received by Defendants, they acted promptly (within two weeks) to obtain a quantification of the amount of fees owed. Defendants also acted promptly (within two weeks) to move to add Nelson once the fees were quantified. Thus, allowing amendment appears particularly excusable and non-prejudicial here, where Defendants were made aware of the threatened liquidation only when they received the October letter (*after* a judgment on liability for attorney fees had already been entered) and acted promptly to seek to add Nelson once the amount was determined.

Were we simply to reapply those same *Fromson* factors to the duly established and largely undisputed facts in this case we might conclude that the grant of the motion to amend the complaint and the fee judgment was proper. Thus, we might affirm even if our review were *de novo*.

Our review, however, is not *de novo*, but rather under the highly deferential standard of abuse of discretion. Most certainly the district court did not abuse its discretion. Nor were its underlying findings of no undue delay or prejudice clearly erroneous. See *Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1046, 22 USPQ2d 1573, 1576 (Fed.Cir.1992) ("The district court's finding of undue delay is not clearly erroneous.").[8] Based on these irreversible findings, we hold the district court acted within its discretion in allowing amendment. Its reasoning, moreover, was set forth clearly and convincingly in a well-written opinion which it reconsidered on motion, but declined to change.

In contrast to the government in *Graham*, Nelson hardly was a stranger to this case. He testified at the hearing on the inequitable conduct issue and his own conduct and his alone was proven by clear and convincing evidence to be inequitable. This issue was fully litigated with both his personal testimony and active participation generally in this very litigation. As the district court found, without clear error:

> Nelson had every reason to believe from the moment that Plaintiff corporation instituted this action that every penny the corporation spent would be a penny out of his own pocket. Further, Nelson has been actually aware of and involved in this litigation from its outset; he was the motivating force behind the institution of the lawsuit. He has diligently— even fiercely—*acted to protect his interests at every stage of the proceedings.*

*Ohio Cellular*, slip op. at 4 (Mar. 25, 1998) (emphasis added). Thus, no basis has been advanced to believe anything different or additional would have been done to defend against the allegation of inequitable conduct had Nelson individually already been added as a party or had he been a party from the outset. Not only did Ohio Cellular have the same incentive to defend against the charge, but the defense was in fact as comprehensive as possible. Thus, no prejudice has been shown by Nelson, much less "undue" prejudice.

8. This case is indeed "similar on its facts" to *Datascope*, but key differences do exist. In that case, Datascope sought to add Peter Schiff as a party to the action after trial when it believed SMEC, Inc. would not be able to pay all the damages owed. In *Datascope*, in contrast to this case, however, Schiff was not personally involved in inequitable conduct; Nelson was. Further, the court in *Datascope* relied heavily on the fact that "Datascope must have known from the outset of this litigation that if it prevailed and recovered damages for lost profits, the judgment would far exceed the amount that SMEC appeared able to pay," in concluding that Datascope's delay in seeking to amend the complaint was indeed "undue." *Id.* at 1046, 22 USPQ2d at 1576. Here, however, Defendants became aware of Ohio Cellular's refusal to pay only when Ohio Cellular's counsel sent a letter, *after judgment* on liability for attorney fees, indicating that Defendants "will not collect [the fee award] because [Ohio Cellular] will be liquidated." Finally, the affirmance on appeal in *Datascope* can be attributed in part to the deferential "abuse of discretion" review of the *denial* of a motion to amend. Here, however, we review the district court's *grant* of a motion to amend under an abuse of discretion standard.

Under these particular circumstances, the fact his name was not already in the caption of the case was little more than a pleading formality, for it did not prejudice him. Moreover, it was prompted entirely by the threatening letter of October, of which Nelson was surely aware.

## CONCLUSION

Because the district court did not abuse its discretion in granting Defendants' post-judgment motion to amend their complaint and the fee judgment to include Nelson as an additional party against whom that judgment is collectable, the district court's decision is

*AFFIRMED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

By judgment entered February 12, 1997 the district court found that Ohio Cellular Products Corporation had committed inequitable conduct in its prosecution of the patents in suit, and awarded attorney fees and costs in favor of the defendants Adams USA and Apehead Manufacturing (together "Adams USA"). The district court entered judgment for fees and costs against Ohio Cellular on January 20, 1998, in the amount of $178,888.51. On February 3, 1998 Adams USA moved to amend retrospectively its third-party complaint against All American Sports Corporation to add Mr. Donald E. Nelson as a third-party defendant and to include him in the judgment for attorney fees and costs. On March 25, 1998 the court granted the motion, and entered judgment against Mr. Nelson personally as "an additional party."

This was an unusual procedure, indeed unprecedented. Absent rare and special circumstances, personal liability can not be imposed on a non-party by the simple expedient of amending a complaint to make him a party after the case has been tried, decided, and judgment rendered C indeed, one year after judgment was rendered. Mr. Nelson was not a party when the

issues were litigated, and no amendment to any complaint, or any other proposal to add him as a party, was made during any part of the action, even though he was present and testified as a witness. His personal liability was never litigated, and "piercing the corporate veil" has been explicitly disclaimed as a ground for charging Mr. Nelson with personal liability. Mr. Nelson had no opportunity to contest the issue of his personal liability for inequitable conduct as an inventor. Thus I must, respectfully, dissent from my colleagues' ratification of this breach of due and fair process.

## DISCUSSION

The Federal Rules favor liberal amendment of complaints and liberal joinder of parties, in order to facilitate bringing before the court all issues and all parties concerned with the issues. These notice-pleading procedures are designed to protect due process, not to avoid it. The Rules do not support joinder of Mr. Nelson and imposition of personal liability against him, after the litigation against Ohio Cellular was over and judgment was entered against Ohio Cellular.

During the litigation Adams USA presented no claim against Mr. Nelson personally. Adams USA does not dispute that it had multiple opportunities to charge and to join Mr. Nelson prior to the final judgment. When Adams USA filed a third-party complaint against All American Sports, Mr. Nelson's personal liability was not suggested. After the judgment against Ohio Cellular, Mr. Nelson's personal liability was not suggested. After the reconsideration hearing, at which Mr. Nelson testified, his personal liability was not suggested. After the October letter from Ohio Cellular's counsel, of which the panel majority makes much, Mr. Nelson was not mentioned or brought into the action. Judgment as to attorney fees was entered on January 20, 1998, one year after the judgment holding Ohio Cellular liable for inequitable conduct. Only there-

after did Adams USA move to amend the complaint under Rule 15.[1]

The district court, upon granting the motion, did not hold an evidentiary hearing, although the panel majority repeatedly refers to Mr. Nelson's participation as a witness. When pressed at oral argument, Adams USA offered no reason for its failure to join Mr. Nelson as a party.[2] However, there must be such a reason, as Professor Moore explains:

> [A] plaintiff must allege a reason for the mistake in order to substitute one legal entity for another when the plaintiff knew of the existence of the second entity at the time the original complaint was filed. In order to sue a corporate officer individually, the plaintiff also must allege a reason for mistake in not identifying the officer in the first place.

MOORE'S FEDERAL PRACTICE § 15.19[3][d] at 15–91 (Rel. Mar. 1997).

Adams USA failed to explain why it did not join Mr. Nelson prior to entry of judgment against Ohio Cellular, and failed to explain its four month delay following the October 1997 letter referring to Ohio Cellular's financial situation. Rather than squarely addressing the issue of undue delay and undue prejudice to Mr. Nelson, the panel majority now finds for itself the fact that Adams USA "acted promptly" to add Mr. Nelson, ignoring the district court's finding that Adams USA "could have moved to amend their complaint long before entry of final judgment."

The fundamentals of due process are notice and the opportunity to defend against the noticed liability. *See Saalfrank v. O'Daniel,* 533 F.2d 325, 330 (6th Cir.1976) (a post-judgment amendment to realign parties "may only be done if all parties have notice of the issues being tried and no prejudice will result"). Omitting the person to be charged until after judgment has been entered can not circumvent these fundamental principles. Although my colleagues now argue and find Mr. Nelson's culpability as an inventor and as corporate principal, his personal liability as an inventor was never placed at issue and was not litigated. The majority opinion states that Mr. Nelson was "solely responsible" for the inequitable conduct. There was no such finding. There was no adjudication against Mr. Nelson. The judgment was entered against Ohio Cellular alone.[3]

Although the panel majority now finds that "the fee award claim could have been brought against [Mr. Nelson] personally," the claim was not so brought. Had it been brought, he could have defended against personal liability. While the majority also finds that there is "no basis . . . to believe" that Mr. Nelson could have avoided personal liability had he been joined as a

---

1. Adams USA never filed a post-judgment motion under Rule 59 seeking to alter or reopen the judgment. However, after entry of judgment, "the court lacks power to rule on a motion to amend unless the party seeking leave obtains relief under Rule 59(e) or 60(b)." 3 MOORE'S FEDERAL PRACTICE § 15.12[2] at 15–21 (Rel. Mar. 1997). A motion to alter judgment must be served no later than 10 days after a judgment is entered, *see* Fed.R.Civ.P. 59(e); perhaps this explains why Adams USA did not file such a motion.

2. The transcript includes the following exchange:

   Judge Plager: . . . Why did you not name Nelson in the original suit? That would have been the logical time to have named him as a defendant.

   Adams USA Counsel: Indeed, your Honor, that probably would have been the easiest time to do it. But what the court found was that there was no prejudice to Mr. Nelson's naming later and in fact—

   Judge Michel: That's not responsive to the question. The question is why didn't you name him earlier.

   Adams USA Counsel: Your Honor, I don't know why there was a particular decision to name him or not to name him earlier. That was not in the record. . . .

3. The district court's Memorandum Opinion states, "the Court finds that Plaintiff's [Ohio Cellular's] conduct before the PTO was inequitable." Slip op. at 1352. The Memorandum Opinion Denying Reconsideration states, "Plaintiff [Ohio Cellular] is guilty of inequitable conduct." Slip op. at 1347.

defendant before judgment was rendered, Mr. Nelson was not so joined. The law, at its most fundamental, does not render judgment simply because a person might have been found liable had he been charged.

The panel majority states that Mr. Nelson's personal culpability was "undisputed." However, testifying as a witness, Mr. Nelson did dispute that he intended to deceive and that he deliberately withheld the Marc reference. The issue of inequitable conduct, although decided adversely to Ohio Cellular, was not based on undisputed facts or admissions. The majority's findings of personal liability do not derive from litigation in which Mr. Nelson had the opportunity to defend his personal liability.[4]

Adams USA explicitly states that its claim is *not* based on "piercing the corporate veil." It is hornbook law that Mr. Nelson and Ohio Cellular are different legal entities. *See* W. FLETCHER, 1 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.35 (1986 & Supp.1998) ("the mere fact that all or almost all of the corporate stock is owned by one individual or a few individuals will not afford sufficient grounds for disregarding corporateness"); *cf. Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 108–13, 89 S.Ct. 1562, 23 L.Ed.2d 129, 161 USPQ 577, 580–82 (1969) (it was error to impose the judgment against a parent corporation, which was fully cognizant of the action against its subsidiary, since the judgment was not rendered in a proceeding to which the parent was a party). Adams USA refused to raise "piercing the corporate veil" as an issue on this appeal, and disclaimed any reliance on a theory of corporate officer liability, perhaps because it recognized, correctly, that there must be timely notice of such reliance. *See* MOORE'S FEDERAL PRACTICE, *supra* (there

must be a reason for the tardy joinder of a corporate principal).

Despite the repeated remonstrance by Adams USA that it is not pursuing Mr. Nelson in his role as corporate principal, the panel majority adverts to this relationship, even as it states that Adams USA was not required to pierce the corporate veil in order to impose liability upon Mr. Nelson in view of his corporate role. The cases relied upon by the panel majority do not support its ruling. In *Orthokinetics* the officers of the corporation were named as defendants at the outset of the litigation. *See Orthokinetics* ("Orthokinetics sued STC [corporation], Entron [corporation], Pivacek [stockholder and officer], Chipman [stockholder and officer], and Cole [stockholder and officer]"). In *Hoover Group* the chief executive officer and principal owner was named as a defendant in an amended complaint filed after the district court had reached its decision that the corporation infringed; although the district court allowed the amendment and held the officer personally liable for inducing the corporation's patent infringement, the Federal Circuit reversed. These cases do not support imposition of personal liability upon Mr. Nelson after final judgment was entered solely against Ohio Cellular.

Mr. Nelson never was given notice of the intention to charge him with personal liability, either as inventor or as president and owner of Ohio Cellular. If the corporate entity is to be disregarded for purposes of imposing personal liability, there must be some notice thereof. This is illustrated by the case on which the panel majority places its greatest reliance, *Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 12 USPQ2d 1299 (Fed.Cir.1989), wherein a motion to add the corporate owners and impose the judgment against them was granted after trial. Both the district court and the Federal Circuit stressed that a

---

**4.** The panel majority states that the "defense was in fact as comprehensive as possible." The comprehensiveness of Ohio Cellular's de-

fense of the charge of inequitable conduct is not before us on this appeal; Ohio Cellular did not appeal its liability.

motion to add these persons had been made *before* trial, and had been denied upon the corporate owners' representations, later found to be false, of corporate solvency. *Id.* at 1304, 12 USPQ2d at 1303 ("the Cusumanos were directly notified by Fromson's pretrial motion that Fromson considered them proper parties-defendant. [The Cusumanos] resisted that motion on the basis of false assurances that [the corporation] was solvent.") The court granted the *renewed* motion to impose liability on the corporate owners. Thus the majority inaptly relies on *Fromson,* for there was a pretrial motion to add the owners, and the Federal Circuit carefully applied the safeguards that are now discarded.

The majority also cites the case of *Kalman v. Berlyn Corp.,* 914 F.2d 1473, 16 USPQ2d 1093 (Fed.Cir.1990), wherein the plaintiff sought to amend the complaint in order to add, as another plaintiff, a related company that was also licensed under the patent; this court held that the amendment should have been permitted. These quite different facts do not support the result herein, as was discussed in *Datascope Corp. v. SMEC, Inc.,* 962 F.2d 1043, 22 USPQ2d 1573 (Fed.Cir.1992), a case factually closest to the case now before us. In *Datascope* the Federal Circuit reached a conclusion directly contrary to that reached herein, for in *Datascope* the district court refused to permit amendment of the complaint after final judgment to add as a party the company's president and principal stockholder, on grounds of undue delay and undue prejudice. The Federal Circuit sustained the district court's ruling that:

> Datascope's failure to add Schiff earlier has operated undue prejudice on Schiff. Schiff has not had, and will not have, an opportunity to contest the claim which Datascope proposes to assert against him individually, as no claim was made at any time during the protracted life of this lawsuit. Datascope's contention that trying SMEC was tantamount to trying Schiff is not valid.

*Id.* at 1044, 22 USPQ2d at 1575. This precedent can not now be ignored; it binds this panel to the law as there applied.

In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) the Court referred to "undue delay" and "undue prejudice" as grounds for refusing amendment to a complaint. It is hard to imagine greater prejudice than imposing personal liability without affording an opportunity to defend one's person. Adams USA states that its claim against Mr. Nelson is as a "joint tortfeasor" based on his role as an inventor. However, he was not sued as a tortfeasor, and the judgment of inequitable conduct was rendered solely against Ohio Cellular. Had Mr. Nelson been personally charged in tort, he could have defended against liability in tort.

The panel majority repeatedly refers to the October 1997 letter from Ohio Cellular's counsel, which advised Adams USA that Ohio Cellular was in financial straits. The majority finds that the letter is "fairly associated" with Mr. Nelson, and that "[a]t the very least, Nelson must have known about the letter and could have rescinded it." However, a communication from a plaintiff corporation does not support retroactive liability of a corporate officer, even upon the panel majority's factual finding that Mr. Nelson "must have known" about the letter.

The panel majority several times qualifies its unusual holding as applying to the "particular circumstances of this case." However, the imposition of personal liability on the inventor, after all proceedings have ended, undoubtedly will breed a new "plague" of inequitable conduct litigation, and further move patent cases from the mainstream of not only substantive law but also procedural law. This is not a matter of judicial "discretion." The judicial obligation is to preserve the processes of justice.