**THE CRUDE COMPANY,**
**Plaintiff/Counterclaim–**
**Defendant,**

v.

**UNITED STATES DEPARTMENT OF ENERGY and Federal Energy Regulatory Commission, Defendants,**

and

**The United States of America, Defendant/Counterclaim– Plaintiff.**

No. Civ.A. 94–00035 SS.

United States District Court, District of Columbia.

Sept. 1, 1999.

Victoria Radd Rollins, John Wesley Vardaman, Jr., Michael Richard Pompeo, Williams & Connolly, Washington, DC, Robert Lester Weinberg, Arlington, VA, William Morton Wiltshire, Harris, Wiltshire & Grannis, LLP, Washington, DC, for plaintiff.

Marsha Stelson Edney, U.S. Department of Justice, Washington, DC, William R. Kirschner, Federal Programs Branch, Civil Division, Washington, DC, Thomas William Millet, IV, U.S. Department of Justice, Washington, DC, for Federal Energy Regulatory Commission, Doe, United States of America, defendants.

Victoria Radd Rollins, Williams & Connolly, Washington, DC, for Marvin Davis, Non Party.

Marsha Stelson Edney, U.S. Department of Justice, Washington, DC, for United States of America, counter-claimant.

Michael Richard Pompeo, Williams & Connolly, Washington, DC, Robert Lester Weinberg, Arlington, VA, William Morton Wiltshire, Harris, Wiltshire & Grannis, LLP, Washington, DC, for The Crude Company, counter-defendant.

### MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Counterclaim-plaintiff, the United States', Motion to Join Marvin Davis in Order to Afford Complete Relief. Mr. Marvin Davis is the current president and chairman of The Crude Company ("TCC"). From 1975 until 1982 TCC was engaged in the business of reselling crude oil. The company ceased active business operations in 1982 although it has retained its corporate status to this day.

For nearly two decades TCC has been the subject of administrative and judicial proceedings. In 1977 the Federal Energy Regulatory Commission ("FERC") commenced an administrative action against TCC based on the agency's allegations that the company was engaging in improper small refiner bias ("SRB") transactions. At that time the company's founder, John Masek, ("Masek") served as president of the company. As such Masek was primarily responsible for the day-

to-day decisions involving the company. Marvin Davis ("Davis") was initially an investor and key financial backer of TCC. He held the position of chairman of TCC's board of directors in 1977.[1] Both Masek and Davis held the same amount of shares in the company, approximately 47.5% each.

In 1986, after somewhat protracted administrative proceedings, DOE found TCC liable for regulatory violations concerning the company's SRB transactions. Two years later, in 1988, Davis replaced Masek as the president of TCC. By that time TCC no longer engaged in any active business operations. On January 7, 1994 TCC sought judicial review of DOE's adverse decision. The United States counterclaimed to collect payments it claimed the company had obtained in violation of DOE regulations concerning SRB transactions. On April 10, 1996, after a hearing and trial, this Court ordered TCC to pay restitution to the United States in the sum of $1,202,143 + $4,417,635 in interest for such violations. *See The Crude Company v. FERC,* 923 F.Supp. 222 (D.D.C.1996), *aff'd The Crude Company v. FERC,* 135 F.3d 1445 (Fed.Cir.1998).[2] The United States has encountered difficulties recovering this judgment because of TCC's insolvency. The United States now wants to pursue Davis to collect its judgment. It requests an order from this Court to join Davis as an individual defendant pursuant to rules 19(a) and/or 21 of the Federal Rules of Civil Procedure. The United States' objective is to hold Davis personally liable for the payment of the April 1996 judgment against TCC. Essentially the government's basis for seeking to impose individual liability is on the theory that TCC is in fact Davis' "alter ego" and that there-fore it is appropriate to "pierce the corporate veil" and hold Davis accountable for TCC's financial obligations.

## ANALYSIS

 In certain limited circumstances non-parties may be joined to an action after judgment has been entered. Rules 19(a) and 21 of the Federal Rules of Civil Procedure contemplate post-judgment joinder so long as certain threshold requirements are met.[3] These requirements are that joinder will not unduly prejudice the opposing party, *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Star Brite Distributing, Inc. v. Gavin,* 746 F.Supp. 633, 650 (N.D.Miss.1990) and that the court's jurisdiction will not be adversely affected. In assessing any undue prejudice, courts focus on whether the moving party delayed unduly in seeking the joinder of an additional party or parties. *See Ilan–Gat Engineers, Ltd. v. Antigua Int'l Bank,* 659 F.2d 234, 242 (D.C.Cir.1981). In this case, both the length of time the government took in seeking to add Davis and the prejudice that would be caused were Davis joined at this stage in the proceedings, militate strongly against granting the United States' motion.

The government commenced administrative proceedings against TCC some eighteen years ago. It has been six years since the DOE held TCC liable for its SRB violations and over three years since this Court ordered the company to make restitution for such violations. During the course of those many years the United States had ample time and opportunity to add Mr. Davis as a named defendant.[4] In its defense the gov-

---

1. Masek and Davis, along with one or two other individuals, comprised TCC's board of directors.

2. For the factual background underlying this Court's April 10, 1996 Memorandum Opinion see *The Crude Company v. FERC,* 923 F.Supp. 222 (D.D.C.1996).

3. Rule 19(a), titled "Persons to be Joined if Feasible", states in relevant part:

 A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief can-not be accorded among those already parties. . . . . Fed.R.Civ.P. 19(a).

 Rule 21, "Misjoinder and Non–Joinder of Parties" states in relevant part:

 Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

4. Ideally the United States should have contemplated including any and all additional parties when it counter-sued TCC in 1994. At that time the government had the opportunity to engage in full discovery of the company as well as the actions of its key personnel. It chose, however,

ernment maintains it did not have available the necessary facts to warrant joinder of Davis until post-judgment discovery occurred in 1996. However, for the government to claim absolutely no knowledge of Davis' part and involvement in TCC until recently is dubious given the procedural history of this case.

The government's unreasonable delay is not the only factor arguing against joiner at this time. Equally important is the consideration of the undue prejudice that would be caused were Davis joined and held individually liable without further process. In order for this Court to hold Davis individually liable for the judgment it would have to pierce the corporate veil. This it can not do based on the record before it. It is undisputed that Davis was not the president of TCC during the time the SRB violations occurred. Davis did not assume this role until some eleven years later. Davis disputes any involvement with or knowledge of the fraudulent transactions that form the basis for the judgment. He also contests the government's assertions that he and other shareholders intentionally "stripped" TCC of its assets in order to make the company judgment-proof. Given the dearth of facts to support a finding that TCC is Davis' "alter ego" without an appropriate record this Court finds no basis for piercing the corporate veil and holding Davis individually liable.

Davis also argues that joinder at this time would deny him certain basic due process rights, such as notice, discovery, an opportunity to confront witnesses and to defend the charges against him. The myriad disputed facts in this case augment Davis' contention and only serve to underscore the need for more complete discovery and a full and fair opportunity to defend against the government's "alter ego" allegations. Only recently, with the filing of the government's current motion, was Davis put on notice of the government's new theory of individual liability. Simply affording Davis an opportunity to respond, as the government suggests in its motion, does not comport with the due process requirement of a full and fair opportunity to defend.[5] Under minimum due process standards Davis is entitled to discovery of the case against him.

The government still has full rights to proceed against Davis or any other individual in a separate action. Indeed, the government is encouraged to proceed against all individual wrongdoing if any exists provided it respects the basic rights of such individuals. Whatever Davis may or may not have done in this case, he is still entitled to certain basic rights that the government seeks to deprive him of through this "shortcut" method.

Accordingly, the government's Motion to Join Marvin Davis on a summary basis will be denied.[6]

not to take discovery with respect to individuals involved with TCC nor to name Davis as a defendant at that time. In 1996, after this Court entered judgment against TCC, the United States again could have moved to join Davis. It was not until some three years after judgment, and some fourteen months after the appeal was decided, that it finally moved. Such inordinate delay has not been satisfactorily explained to this court.

5. *See Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1355 (Fed.Cir.1999) (Newman J. dissenting) ("it is hard to imagine greater prejudice than imposing personal liability without affording an opportunity to defend one's person").

6. This case is distinguishable from *Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1355 (Fed.Cir.1999) cited by the government in its briefs. In that case the court permitted the use of a post-judgment summary procedure to hold an individual accountable for the judgment entered against his company. However, in *Ohio Cellular*, it was undisputed that the individual, the president and sole shareholder of the company, had participated in the underlying improper acts of the company. Moreover, the basis for imposing liability in that case was individual accountability rather than piercing the corporate veil.