**ULEAD SYSTEMS, INC., a California corporation, Plaintiff,**

v.

**LEX COMPUTER & MANAGEMENT CORP., a New Hampshire corporation, Defendant.**

No. CV 98–5880 DT (CTx).

United States District Court, C.D. California.

May 29, 2001.

—————

Jon E. Hokanson, Kenneth L. Wilton, Jill A. Schwartz, Los Angeles, CA, for Plaintiff.

Jeffrey G. Sheldon, William J. Brutacao, Sheldon & Mak, Pasadena, CA, for Defendant.

ORDER **GRANTING** ULEAD SYSTEMS, INC.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285 AND **DENYING** REQUEST FOR SANCTIONS PURSUANT TO FED.R.CIV.P. 11 AND 28 U.S.C. § 1927, AND EXPERT WITNESS FEES PURSUANT TO FED.R.CIV.P. 26

TEVRIZIAN, District Judge.

## I. *Background*

### A. Introduction

This action is brought by Plaintiff Ulead Systems, Inc., a California corporation, ("Ulead") against Defendant Lex Computer & Management Corp. ("Lex") for Declaratory Judgment of Non–Infringement, Invalidity and Unenforceability of U.S.Patent No. 4,538,188. On January 22, 2001, this Court granted Summary Judgment in favor of Ulead for Invalidity and Unenforceability of Patent '188 based on Lex's inequitable and bad faith conduct.

Based on this Court's January 22, 2001 granting of Summary Judgment on Ulead's December 26, 2000 Motion No. 1 for Summary Judgment, Ulead filed the present Motion for Attorneys' Fees pursuant to 35 U.S.C. Section 285, Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. Section 1927, and Expert Witness Fees pursuant to Rule 26 of the Federal Rules of Civil Procedure.

### B. Factual Summary of Complaint

The following facts are alleged in Plaintiff Ulead's Complaint:

Plaintiff Ulead imports, uses and sells personal computer-implemented software products. *See,* Complaint at ¶ 6. Among the products offered by Ulead is one known as MediaStudio Pro. *Id.* The MediaStudio Pro software is used to manage and manipulate sound and image files that are stored in digital form and that have been pre-addressed prior to any manipulation by the MediaStudio Pro software. *Id.*

Defendant Lex is believed to be the owner of the entire right, title and interest in and to United States Patent 4,538,188 ("the '188 Patent"), entitled "Video Composition Method and Apparatus." The '188 Patent is directed to the manipulation of video and sound images that are stored in analog form on video tape and have not been pre-addressed prior to any manipulation by the patented apparatus and/or method. *Id.* at ¶ 7. Beginning in May 1997 and continuing to the present Lex has asserted that Ulead's sale, manufacture, use and/or leasing of its MediaStudio Pro software infringes the '188 Patent. *Id.* at ¶ 8. Plaintiff Ulead denies that its sale or use of the MediaStudio Pro software, challenged by Lex, infringes the '188 Patent and denies that it manufactures and/or leases the MediaStudio Pro software in the United States. Plaintiff Ulead also believes and alleges the '188 Patent is invalid and/or unenforceable. As a result, Ulead does not intend to cease the use of sale of the MediaStudio Pro software. *Id.* at ¶ 9.

Plaintiff Ulead alleges that there currently exists an actual and justiciable controversy over Ulead's right to continue to

use and sell the MediaStudio Pro software that Lex claims infringes its alleged patent. As such, Plaintiff Ulead alleges that it is entitled to a declaratory judgment that its MediaStudio Pro software does not infringe the '188 Patent and/or that the '188 Patent is invalid and/or unenforceable. *Id.* at ¶ 10.

## C. The Following Facts are Undisputed[1]

Simon V. Haberman is the President, director, and sole shareholder of Lex. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 1.

Simon V. Haberman is a practicing attorney, licensed to practice law since 1950, and specializing in real estate and intellectual property law. *See,* Haberman Tr. at 125:3–13. Mr. Haberman failed the U.S.Patent Exam. *See,* Haberman Tr. at 158:11; *see also,* Lex's Statement of Genuine Issues at ¶ 2.

Mr. Haberman has asserted himself as lead counsel in this patent case, and, *inter alia,* a related case for patent infringement filed by Lex in New York. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 3.

Mr. Haberman has studied for and taken the patent bar examination. Prior to taking the patent bar examination, Haberman twice, once in 1995 and once in 1997, took a patent review course offered by the Practicing Law Institute ("PLI"). *Id.* at ¶ 4; Haberman Tr., 156:13–21.

The PLI courses taken by Haberman had written course material that covered maintenance fees, including the payment of "small entity" fees if the patent owner qualifies as a small business entity. *See, Id.* at ¶ 5; *see also,* Lex's Statement of Genuine Issues at ¶ 5; Haberman Tr. at 158:12–23, 159:18–21, 192:20–25.

Irving Weiner ("Weiner"), a patent attorney registered to practice before the United State Patent and Trademark Office ("PTO"), is responsible for maintaining the '188 Patent, including paying the maintenance fees due on the patent. *See, Id.* at ¶ 6; Haberman Tr. 191:10–192:15. Mr. Weiner knows that Lex is in the business of licensing its patents, including the '188 Patent. *See,* Haberman Tr. 189:3–6.

Lex's sole business is to license its patents and collect royalties; it does not manufacture, distribute or sell any products. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 11; Haberman Tr., 80:10–25; 168:16–172:4; 215:1–5.

Lex's licensing program yielded twenty-one licenses by the summer of 2000 (the individual licenses are described in Paragraphs 14–39). *See,* Ulead's Statement of Uncontroverted Facts at ¶ 12; *see also,* Hokanson Decl., Exhs. 520–540.

Haberman signed each of these licenses on behalf of Lex, and is familiar with the companies to which the '188 Patent has been licensed. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 13; Haberman Tr. 185:22–24; 186:2–7.

Lex delegated the responsibility to pay the maintenance fees for the '188 Patent to its patent counsel, Irving Weiner. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 40.

Weiner, on behalf of Lex, petitioned the PTO to accept "unintentionally delayed payment of maintenance fee" in an effort to reinstate the '188 Patent. *See, Id.* at ¶ 42.

In the Petition, Lex took the position that it qualified as a small entity and submitted a Verified Statement signed by Haberman asserting Lex's status as a small

---

**1.** The following undisputed facts represent those that this Court deemed pertinent to Motion No. 1 for Summary Judgment. By no means do they represent all of the undisputed facts.

entity. *See, Id.* at ¶ 43. In the Petition, Lex did not identify its licensees. *See, Id.* at ¶ 44.

Haberman read the declaration, declaring that Lex "qualifies as a small business concern as defined in 13 C.F.R. § 121.3–18, and reproduced in 37 C.F.R. § 1.9(d), for purposes [sic] of paying reduced fees under section 41(a) and (b) of Title 25, United States Code . . . ," agreed with it, and signed it. Haberman did not read 37 C.F.R. § 1.9(d) prior to signing the declaration. It is Lex's opinion (as of January 8, 2000) that it qualifies as a small entity. *See, Id.* at ¶¶ 45–46; Haberman Tr. 201:8–15, 202:12–19; 206:10–18; 210:14–216; 217:15–218:10.

Weiner failed to pay the 12th year maintenance fee for the '188 Patent. *See, Id.* at ¶ 35. On October 5, 1998, Weiner, on behalf of Lex, submitted a second petition to accept "unintentionally delayed payment of maintenance fee" to the PTO. *See, Id.* at ¶ 50. Weiner asserted in the Petition that "[a] verified statement establishing small entity status for this patent was filed November 2, 1993. It is confirmed that the small entity status for this patent has been checked and is still in effect." *See, Id.* at ¶ 51. Lex does not recall having any discussions with Weiner prior to the payment of the 12th year maintenance fee for the '188 Patent, and Weiner and Haberman have never discussed the issue of small entity/large entity status or whether the licensing of the '188 Patent affected whether Lex had an exclusive right in the '188 Patent. *See, Id.* at ¶ 52. The PTO accepted Lex's second petition to accept "unintentionally delayed payment of maintenance fee" and reinstated the '188 Patent. *See, Id.* at ¶ 53.

Lex has claimed small entity status with regard to all nine of the patents it owns even though Lex and Haberman believe that Microsoft, Sony, Matsushita, Hitachi, Adobe, Macromedia, Avid and Tectronix, all licensees of Lex, employ over 500 people. Haberman Tr. 218:11–21; 230:24–231:25; Exh. 42. As a result, Lex has saved approximately $25,000 in maintenance fees over the past ten years. *See, Id.* at ¶ 54; Hokanson Decl. at ¶ 14.

## D. Procedural History

On July 21, 1998, Plaintiff Ulead filed its Complaint.

On April 7, 1999, Defendant and Counter–Claim Plaintiff Lex filed an Answer and Counter–Claim. In the Counter–Claim, Lex asserts a claim for patent infringement against Ulead.

On April 29, 1999, Plaintiff and Counter–Claim Defendant Ulead filed its Answer to the Counter–Claim.

On April 7, 2000, Defendant and Counter–Claim Plaintiff Lex filed a Motion to Join Ulead–Taiwan and to Continue Discovery Cutoff and Pre–Trial Dates, which was denied without prejudice by this Court.

On June 26, 2000, Lex filed the Renewed Motion to Join Ulead–Taiwan as an Indispensable Party and to Continue Discovery Cutoff and Pre–Trial Dates, which this Court granted on July 18, 2000.

On July 25, 2000, Defendant and Counter–Claim Plaintiff Lex filed a Cross–Claim against Ulead–Taiwan for Patent Infringement with Demand for Jury Trial.

On September 7, 2000, Plaintiff and Counter–Claim Defendant Ulead–California and Cross–Claim Defendant and Counter–Claimant Ulead–Taiwan filed an Answer to Cross–Claim of Lex Computer & Management Corp. and Counter–Claim.

On September 25, 2000 Defendant and Counter–Claim Plaintiff Lex filed an Answer to Ulead–Taiwan's Counter–Claim.

On December 12, 2000, Defendant and Counter–Claim Plaintiff Lex filed a Motion

for an Order Granting Leave to File Amended Counter–Claim Against Ulead–California and Amended Cross–Claim Against Ulead–Taiwan, which this Court granted on January 2, 2001.

On December 26 and 28, 2000, Plaintiff and Counter–Defendant Ulead–California and Cross–Defendant and Counter-claimant Ulead–Taiwan filed Plaintiff's Motion No. 1 and 2, respectively, for Notice of Motion and Motion for Summary Judgment of Invalidity of U.S.Patent No. 4,538,188.

On January 2, 2001, Plaintiff and Counter–Defendant Ulead–California and Cross–Defendant and Counter-claimant Ulead–Taiwan (collectively "Ulead") filed Plaintiff's Motion No. 3, Notice of Motion and Motion for Summary Judgment of Non–Infringement of U.S.Patent No. 4,538,188, which was ordered off calendar at the January 22, 2001 hearing.

On January 12, 2001, Plaintiff Ulead filed its Answer of Ulead Systems, Inc.— California to First Amended Counter–Claim by Lex Against Ulead–California for Patent Infringement, Inducing Infringement and Contributory Infringement.

On that same date, Plaintiff Ulead filed its Answer of Ulead Systems, Inc.—Taiwan to First Amended Cross–Claim by Lex for Patent Infringement, Inducing Infringement and Contributory Infringement against Ulead–Taiwan and Counter–Claim.

On January 22, 2001, this Court granted Uleads' (California and Taiwan) Joint Motion No. 1 for Summary Judgment of Unenforceability, Invalidity and/or Expiration of U.S.Patent No. 4,538,188 and ordered all other Motions (for Summary Judgment) off calendar.

On March 13, 2001, Plaintiff and Counter–Claim Defendant Ulead filed a [Proposed] Judgment. This Court adopted the [Proposed] Judgment as the Judgment of this Court on that same date. Said Judg-

ment was entered by the Clerk as of March 20, 2001.

On March 19, 2001, Defendant and Counter–Claimant Lex filed a Substitution of Attorney, substituting Jeffrey G. Sheldon of Sheldon & Mak as attorney of record in place and stead of Robert Jacobs of Beehler & Pavitt.

On April 3, 2001, Plaintiff and Counter–Claim Defendant Ulead filed a Notice of Motion and Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285, Sanctions Pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 and Expert Witness Fees Pursuant to Federal Rule of Civil Procedure·26.

On April 4, 2001, Plaintiff and Counter–Claim Defendant Ulead filed a Notice of Application to the Clerk to Tax Costs.

On April 12, 2001, the parties filed a Stipulation and Proposed Order Continuing the Hearing and Briefing Dates on Plaintiff Ulead's Motion for Attorneys' Fees, Sanctions and Expert Witness Fees.

On April 16, 2001, Defendant and Counter–Claimant Lex filed a Notice of Appeal from Summary Judgment (Entered on March 20, 2001).

## II. DISCUSSION

### A. Standard

#### 1. Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285

■ Section 285 of the Patent Act provides in pertinent part: "A court in exceptional cases may award reasonable attorneys fees to the prevailing party. The determination to award 'exceptional' attorney fees under Section 285 requires a two step analysis: (1) the Court must determine whether there is clear and convincing evidence that the case is exceptional; (2) having made such a finding, the Court may exercise its discretion to award fees to the

prevailing party." *Reactive Metals & Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582 (Fed.Cir.1985); *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir. 1995).

The purpose of such an award is simple: "When confronted with litigation brought in bad faith, the court's discretion of its inherent power to rectify, at least in part, the injustice done to the defendant serves to defend the court and the judicial system against abuse." *D.O.C.C., Inc. v. Spintech, Inc.,* 36 U.S.P.Q.2d 1145, 1158, 1994 WL 872025 (S.D.N.Y.1994) (*citing Mathis v. Spears,* 857 F.2d 749, 754 (Fed.Cir.1988)). As the Federal Circuit has noted, "no award under Section 285 can fully compensate a defendant subject to bad faith litigation, e.g. for the loss of executives' time and missed business opportunities." *Mathis,* 857 F.2d at 754. A case generally is considered to be exceptional for various reasons, not all of which are required to be present: inequitable conduct committed by the patent owner, the filing and maintenance of a frivolous lawsuit, vexatious or unjustified litigation, or misconduct during litigation. *Reactive Metals,* 769 F.2d at 1582; *Bayer Aktiengesellschaft v. Duphar Int'l. Research B.V.,* 738 F.2d 1237, 1242 (Fed.Cir.1984).

However, even though inequitable conduct before the PTO is found, fees may be refused to the prevailing party. *Rohm & Haas Co. v. Crystal Chemical Co.,* 736 F.2d 688, 222 U.S.P.Q. 97 (Fed.Cir.1984). At the trial level, a prevailing party who seeks an award of attorney fees has the burden of proof of facts which establish the exceptional character of the case. The quantum of proof required to prove bad faith conduct is clear and convincing evidence. *See, Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1538, 222 U.S.P.Q. 553, 560 (Fed.Cir.1984).[2]

### 2. Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure permits sanctions under the following circumstances:

Rule 11(b) provides that:

Representations to the Court. By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(C) Sanctions. If after notice and a reasonable opportunity to respond, the

---

**2.** On appeal, the Ninth Circuit reviews the factual underpinnings of the award under the clearly erroneous standard of FRCP 52(a). Further, where the basis for the award is inequitable conduct before the PTO, the Ninth Circuit evaluates whether the correct legal standard was applied by the district court in reaching its conclusion. *Hycor Corp. v. Schlueter Co.,* 740 F.2d at 1538–39, 222 U.S.P.Q. at 560.

court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion ..., the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys' fees incurred in presenting or opposing the motion.

(2) Nature of Sanction. Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty to the court, or if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

### 3. Standard for FRCP 26(b)(4)(B) & (C)

Rule 26(b)(4)(B) "Trial Preparation: Experts," provides, in pertinent part:

(B) A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided ... upon showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Rule 26(b)(4)(C) provides that:

(C) ... (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

### 4. 28 U.S.C. § 1927

28 U.S.C. Section 1927, "Counsel's liability for excessive costs" provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*See, Id.; Trulis v. Barton,* 107 F.3d 685 (9th Cir.1995) (Award of sanctions pursu-

ant to statute authorizing such an award against attorney or other party who unreasonably and vexatiously multiplies proceedings must be supported by finding of subjective bad faith); *In re Keegan Management Co. Securities Litigation*, 154 F.R.D. 237 (N.D.Cal.1994) reversed, 78 F.3d 431 (despite statutory language indicating "reasonableness" standard, statutory sanctions for vexatious filings are not awarded unless attorney acted recklessly or in bad faith; however unlike sanctions under Rule 11, pleading does not have to be entirely frivolous for statutory sanctions to attach, so long as finding of bad faith or recklessness is made).

### B. Analysis

**1. Ulead's Evidentiary Objections to Lex's Declarations of Robert Jacobs and Seth Haberman Filed in Support of Opposition to Motion for Attorneys' Fees are Granted in Part and Denied in Part**

A. Declaration of Robert Jacobs: Ulead's Objections are granted in part and denied in part:

2. Paragraph 4 – 6: granted; based on lack of personal knowledge and inadmissible hearsay. Fed. R.Evid. 602.

3 Paragraph 8 – 10: denied;

4. Paragraph 11: granted; violates Best Evidence Rule. Fed.R.Evid. 1102.

5. Paragraph 14 & 16, 17: denied;

6. Paragraph 19, 21 – 24: denied, because not asserted for the truth of the matter asserted. Fed. R.Evid. 602;

7. Paragraph 25(A) –(G): granted as argumentative and legal conclusions.

The Court has taken these objections into account when relying on portions of Mr. Jacobs' Declaration, however the Court will consider these paragraphs as legal arguments for purposes of ascertaining the reasonableness of the amount of attorneys' and expert fees to award to Ulead.

B. Declaration of Seth Haberman: Paragraph 4—granted based on Fed.R.Evid. 602 & 701.

**2. Ulead's Motion for Attorneys' Fees is Granted Pursuant to 35 U.S.C. § 285.**

 In this Motion, Ulead requests that the Court find this case is "exceptional," warranting an award, under 35 U.S.C. § 285 ("Section 285"), of attorneys' fees and costs Ulead expended here, in Taiwan and in New York defending against Lex's claims. Ulead requests that these fees be awarded jointly and severally against Lex and its counsel, sole shareholder and president, Simon V. Haberman, under Section 285, and 28 U.S.C. Section 1927 as a sanction for Haberman's needless and vexatious multiplication of these proceedings. Under current, controlling authority, expert witness fees are not recoverable under Section 285. Ulead, therefore, requests that its expert witness fees (together with the attorneys' fees and costs) be awarded to it pursuant to Rule 11 of the Federal Rules of Civil Procedure, or the Court's inherent power to sanction. Finally, and in the alternative, Ulead moves pursuant to Rule 26(b)(4), for certain of its expert witness fees to the extent not awarded above. Ulead claims that it is not seeking double recovery, it is simply seeking to be made whole.

In opposition, Lex objects to Ulead's fee requests for the following reasons. First, Lex argues that Ulead has presented no clear and convincing evidence to support finding the case exceptional. Lex posits that inequitable conduct alone does not

mandate that determination and does not require a fee award. *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir.1985). Thus, Lex asserts that the Court should not exercise its discretion and award fees to Ulead—Lex vigorously prosecuted and defended its case just as Ulead did. Unenforceability is a sufficient penalty in a case of first impression decided on a basis not raised in either prefiling negotiations or in the pleadings.

Second, Ulead's fee request under FRCP Rule 11 should likewise be denied. That request violates the holding in *Barber v. Miller*, 146 F.3d 707 (9th Cir.1998). Rule 11 Sanctions have been granted where there was no basis for filing the action and the prevailing party moved for non-infringement very early in the case, not some year and a half later.

Third, Lex contends that there is no basis for sanctions under 28 U.S.C. Section 1927 or any other authority. Lex and its lead counsel, Mr. Haberman, litigated this case in good faith. Section 1927 applies to "excess" costs, expenses, and fees, yet Ulead asks for all its fees, without any required showing what actions were allegedly "excessive." Based on these reasons enumerated by Lex, Lex opposes the payment of attorneys' and other fees.

### a. This Case Qualifies as "Exceptional"

35 U.S.C. § 285 provides that the court in "exceptional cases may award reasonable attorney fees to the prevailing party." While the decision to award attorney fees is discretionary with the trial judge, the finding that a case is "exceptional" is a finding of fact reviewable under the "clearly erroneous" standard. *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582–83, 226 U.S.P.Q. 821, 824 (Fed.Cir.1985). Among the types of conduct which can form a basis for finding a case exceptional are willful infringement,

inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit. *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455, 227 USPQ 293, 298 (Fed.Cir.1985). Such conduct must be supported by clear and convincing evidence. *Reactive Metals*, 769 F.2d at 1582, 226 USPQ at 824.

### i. Clear and Convincing Evidence of Lex's Bad Faith in Defrauding the PTO Led to this Court's Finding of Lex's "Inequitable Conduct"

"An applicant's fraud on the Patent Office is sufficient to convert his later infringement action into an exceptional case within the meaning of Section 285." *See, Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 294 (9th Cir.1969); *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1312 (Fed.Cir. 1988) ("Inequitable conduct is a separate defense to patent infringement and, either alone or in conjunction with trial conduct, may constitute the basis for an award of attorney fees under 35 U.S.C. § 285"); *Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1348 (Fed.Cir. 1999), rev'd on other grounds, sub nom., *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) ("It is settled that a case may be found exceptional when the patent applicant has committed inequitable conduct"). As the Ninth Circuit has stated, "[t]he party who succeeds in invalidating the unlawful patent performs a valuable public service. It is appropriate under such circumstances to reward the prevailing party by giving him attorney's fees for his efforts, and it is equally appropriate to penalize in the same measure the patentee who obtained the patent by his wrongdoing." *Monolith*, 407 F.2d at 294.

While Ulead's reliance on *Monolith* is entirely appropriate, Lex proffers *Tenax*

*Corp. v. Tensar Corp.*, 22 U.S.P.Q.2d 1264, 1991 WL 336921 (D.Md.1991) (Schewe Decl., Exh. "D"), a Maryland district court decision for the argument that "[a]lleged infringers have been denied awards of attorneys' fees even though they successfully proved inequitable conduct through the course of the litigation." *See, Id.* at 1269 (*citing Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 2 U.S.P.Q.2d 2015 (Fed.Cir.1987)). In *Gardco*, the District Court, after a trial, held that the patentee had engaged in inequitable conduct before the PTO and declared the patent unenforceable. *Id.* In spite of this ruling, the District Court declined to award attorneys' fees to the alleged infringer. The Federal Circuit, in affirming both the finding of inequitable conduct and the denial of an award of attorneys' fees, opined as follows:

> Gardco brought the suit and proved inequitable conduct, yet it has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the case as "exceptional." After the district court determines that a case is exceptional, there remains in every case its freedom to exercise its discretion "informed by the court's familiarity with the matter in litigation and the interest of justice."

*Id.* (*citing Gardco*, at 1215 (*citing S.C. Johnson*, 781 F.2d at 201)). In *Tenax*, because of the strong evidence of willful infringement by the plaintiffs, the court declined to award attorneys' fees despite the patentee's inequitable conduct. The litigation had been commenced by the plaintiffs even though they had not investigated the scope of the patent rights which they were challenging. Due to this transgression, the court found that it would only be just to require plaintiffs to bear their own litigation costs and held that it was an "exceptional" case under Section 285. In this instance, Lex accuses Ulead of misconduct during the discovery process, especially for difficulty in conducting depositions. Ulead, in turn, accuses Lex in failing to properly investigate this claim before filing suit, and instead depending on an "incompetent lay investigation by Mr. Schuler conducted on behalf of Lex." Motion at 10:8–15. Both parties engage in analysis of issues brought in Summary Judgment Motions No. 2 and 3, which were rendered moot by this Court after granting Summary Judgment Motion No. 1. Therefore, the Court declines to delve into the particulars of those motions as they were rendered moot and were never considered by this Court.

■ Lex, in its Opposition, responds that Ulead has presented no clear and convincing evidence to support the finding that this case is exceptional. Furthermore, Lex argues that inequitable conduct, alone, does not mandate that determination and does not mandate a fee award. *See, Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir. 1985). An award of attorney fees does not follow automatically from a holding of inequitable conduct. *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed.Cir.1987); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1563 n. 6 (Fed.Cir.1989); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 815 (Fed.Cir.1990); *Reactive Metals & Alloys Corp. v. ESM, Inc.* 769 F.2d 1578, 1582 (Fed.Cir.1985) (reversing trial court's award of attorney fees under Section 285, noting "even though inequitable conduct before the PTO is found fees may be refused"); *J.P. Stevens Company, Inc. v. Lex Tex Ltd., Inc.* 822 F.2d 1047, 1049 (Fed.Cir.1987).

Accordingly, Lex argues that although this Court determined that the '188 Patent was unenforceable due to inequitable con-

duct, the present action is not exceptional. Lex asserts that the inequitable conduct determination was based on events occurring after the '188 Patent issued. Lex reasons that while courts previously have awarded attorneys' fees where a patent owner if found to have intentionally misrepresented facts to the PTO during the prosecution of a patent, "there is no comparable rationale justifying" an award of attorneys' fees where a patent owner intentionally misrepresents facts to the PTO after the patent issued.

Ulead appropriately responds that this sequence of events is of no consequence. The fraud on the PTO may be in the form of omitting prior art, or by underpaying maintenance fees after the patent's issuance. Inequitable conduct comes in many forms, and treating a pre-patent issuance of fraud on the PTO as exceptional, while excusing a post-issuance fraud, would elevate form over substance.[3]

Lex further contends that unenforceability of the patent is a sufficient penalty in a case of first impression decided on a basis not raised in either prefiling negotiations or in the pleadings. However, the fact that no reported decision had specifically found inequitable conduct under these circumstances in no way diminishes the clear language of 37 C.F.R. § 1.28(d) ("If small entity status is claimed fraudulently or with intent to deceive, that is treated by the PTO as a fraud practiced or attempted fraud on the PTO.") The fact that no prior cases put Lex on notice absolves Lex of bad faith for any alleged misconduct in litigation, but not for conduct this Court found to constitute bad faith payment of small entity maintenance fees to the PTO.

*Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578 (1985) provides the standard for determining whether inequitable conduct, alone, suffices to justify an award of attorneys' fees. The Federal Circuit provides that "[a]s the statutory language indicates, the necessary predicate for the exercise of discretion by the trial court is a finding that the case is "exceptional" because of, inter alia, inequitable conduct during prosecution of the patent or misconduct during litigation." *See, Id.* at 1582. A finding of such "exceptional circumstances does not, however, mandate an award of attorney fees. It is at this point that the trial court exercises its discretion in making, or not making an award. For example, even though in equitable conduct before the PTO is found, fees may be refused to the prevailing party. *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 222 U.S.P.Q. 97 (Fed. Cir.1984). The trial court must articulate the more particular factual findings from which the finding of "exceptional circum-

---

3. Ulead argues that inequitable conduct comes in many forms, ranging from failing to disclose prior art during the prosecution of a patent (*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1255 (Fed. Cir.1997), cert. denied, 523 U.S. 1071, 118 S.Ct. 1510, 140 L.Ed.2d 665 (1998)), misrepresenting sales information related to the 35 U.S.C. § 102(b) "on sale" bar (*Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1192–93 (Fed.Cir.1993)), misrepresenting whether or not a prior art search had been conducted in support of a petition to make special (*Gen'l Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1411 (Fed. Cir.1994)), failing to disclose the identity of all of the inventors of the claimed invention and their activities (*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 (Fed.Cir.2000)), to failing to properly disclose a ruling by the PTO Board of Appeals regarding the filing date of a related application (*Li Second Family Ltd. Partnership v. Toshiba Corp.*, 231 F.3d 1373, 1381 (Fed. Cir.2000)). Each of these types of inequitable conduct has a single element at their core: the patent owner's violation of its duty of candor to the PTO. Lex presents no rationale for differentiating between a patent owner who commits fraud on the PTO before the application is examined, during examination, or after examination.

stances" follows. *Reactive,* 769 F.2d at 1582 (*citing Hughes v. Novi American, Inc.,* 724 F.2d 122, 124, 220 U.S.P.Q. 707 (Fed.Cir.1984)).

The district court in *Reactive* stated that while patent invalidity alone would not justify fees under 35 U.S.C. Section 285, "material misrepresentation to the [PTO] failure to disclose pre-application sales and the prosecution of the lawsuit in bad faith constitute 'exceptional circumstances' so as to warrant the award of attorneys' fees." However, the Federal Circuit disagreed with the trial court's underlying assumption that it is incumbent upon an applicant or his attorney to disclose to the PTO all use activities which occurred prior to the application date so that the PTO examiner can decide whether such activities amount to a public use or on-sale time bar under Section 102(b). The Federal Circuit held, instead, that "[n]o precedent of this court or any other circuit supports such a broad proposition. Such activities may or may not be 'material' to examination." The Federal Circuit further held that the fact of non-disclosure would have no effect on the litigation unless there were also proof of actual wrongful intent or gross negligence in the nondisclosure. "Simple negligence is not enough." *Id.* at 1583. The court expounded that "simple negligence, oversight, or an erroneous judgment made in good faith, is insufficient." *Id.* (citations omitted.) This Court finds the instant case distinguishable.

For purposes of granting the Motion for Summary Judgment in this case, this Court found that Lex committed inequitable conduct by falsely claiming to be a small entity and paying reduced maintenance fees on its patent. The facts which imputed Lex with bad faith misrepresentation to the PTO were specific testimony provided by Lex that endowed Haberman, the CEO and sole shareholder, with knowledge of the facts, and ignorance of the law,

and Lex's attorney with knowledge of the law and ignorance of the facts. In addition, after Lex's maintenance payments were late and required reinstatement of the patent, Lex again wrongfully confirmed that it was a small entity and paid reduced fees. It was only after the onset of litigation that Lex finally paid the appropriate fees. In *Reactive,* the Federal Circuit cited to *J.P. Stevens & Co. v. Lex Tex., Ltd.,* 747 F.2d 1553, 1560, 223 U.S.P.Q. 1089, 1092 (Fed.Cir.1984) which describes in detail the level of intent required to support a finding for a case to be exceptional:

> Proof of deliberate scheming is not needed; gross negligence is sufficient. Gross negligence is present when the actor, judged as a reasonable person in his position, should have known of the materiality of a withheld reference. On the other hand, simple negligence, oversight, or an erroneous judgment made in good faith, is insufficient.

*Id.* at 1584. The facts in this case indicate more than mere negligence, and rather at a minimum, gross negligence, on the part of Haberman and Lex's attorney in failing to ascertain that Lex did not qualify as a small entity under the PTO regulations.

In the Motion for Summary Judgment, Ulead provided evidence of the PTO Report which states that the '188 Patent expired as of October 16, 1998 for "failure to pay [the 8th year] maintenance fees," contrary to Lex's assertions of mere "underpayment." *See,* Hokanson Decl., Exh. 42 at p. 202. However, Lex correctly points out that the PTO reinstated the '188 Patent as of November 15, 1993. Moreover, Lex states that the difference between the small entity maintenance fee amounts paid in 1993 and the large entity maintenance fee amount that should have been paid in 1993 was recently forwarded to the PTO, and the PTO has agreed to accept it. *See,* Second Weiner Decl., Exh. 1. Thus, while

Lex's '188 Patent may have been deemed expired in the 8th year as propounded by Ulead, Lex's '188 Patent appears to have been reinstated.

Therefore, in Motion for Summary Judgment No. 1, this Court focused on the issue of whether 37 C.F.R. Section 1.28(c) applies to the instant action. Section 1.28(c) specifically addresses the correction of an erroneous claim of small entity status and erroneous payment of the small entity fee. Section 1.28 permits a patentee to correct the erroneous payment of a small entity fee at any time. *See, D.H. Technology, Inc. v. Synergystex Intern'l, Inc.*, 154 F.3d 1333 (Fed.Cir.1998). Section 1.28 provides:

> If status as a small entity is established in good faith, and fees as a small entity are paid in good faith, in any application or patent, and it is later discovered that such status as a small entity was established in error or that through error the Office was not notified of a change in status as required by paragraph (b) of this section, the error will be excused upon payment of the deficiency between the amount paid and the amount due.

Accordingly, this Court found that Lex failed to demonstrate that it established small entity status in "good faith" in order to avoid expiration of the patent.

■ Lex asserted that after it recently discovered that it had mistakenly asserted small entity status, Lex's attorney took immediate steps to notify the PTO of the error and pay the deficiency. As previously discussed, Lex only attempted to correct the alleged error after the onset of litigation had begun and only when the threat of invalidating the patent became a reality.

By contrast, Ulead presented sufficient circumstantial evidence to establish, as a matter of law, that between Mr. Haberman's alleged ignorance of the law and Mr. Weiner's purported ignorance of the facts, they were so willfully blind as to preclude a finding of good faith. Thus, there is clear and convincing evidence that Lex committed inequitable conduct and was not acting in good faith [4].

■ Based on the facts in this case, this Court, in its Order Granting Summary Judgment Motion No. 1, found the '188 Patent to be unenforceable and/or invalid due to Lex's bad faith and inequitable conduct, namely its material misrepresentations to the United States Patent and Trademark Office ("PTO"). *See,* January 22, 2001 Order Granting Summary Judgment. In sum, an award of fees in a patent case serves several functions: It compensates the prevailing party for the expense associated with being the victim of baseless litigation, protects the court system from misuse, and deters a patent owner from further subjecting others to similar suits. *See, Mathis,* 857 F.2d at 754. In this instance, this Court finds that inequitable conduct and bad faith by Lex render this case an exceptional case under 35 U.S.C. Section 285. Accordingly, this Court finds that Lex has engaged in inequitable conduct supported by gross negligence, at a minimum, by clear and convincing evidence justifying an award of attorneys' fees to Ulead.

### ii. Failure to Conduct A Meaningful Prefiling Investigation

Ulead asserts that the course of conduct engaged in by Lex, as orchestrated by

---

4. Lex's implication that it established "good faith" because the PTO is accepting its late payment is equally unavailing. *See,* Abraham Hershkovitz, "Petitions Practice Writing the PTO on Patent Matter" (December 1, 1997). This article, appropriately cited by Ulead, is authored by the Director, Office of Petitions, for the PTO, and reflects the fact that the PTO simply accepts the payment of late fees without examination. As such, the PTO's acceptance of Lex's late fees, has no precedential effect on this Court.

Simon Haberman, clearly and convincingly demonstrates that Haberman and Lex have used the patent system, and the Federal Courts, as tools of extortion and to pursue their meritless course of action.

As an example, Ulead proffers that Lex never obtained a competent opinion regarding the issue of infringement. Instead, Ulead contends that Lex relied on the lay "investigation" of one of the co-inventors of the patent, Chester Schuler, who is not an attorney and admitted that he used no rule of law in his "investigation" of the infringement issue. *See,* Hokanson Decl., §§ 10–13. For example, at his deposition, in responses to examination regarding the basis for his opinion, Mr. Schuler stated that he never reviewed legal materials. *See,* Exh. 3 at 15:12–20:13; 21:6–47:22; Exh. 4 at 58:5–69:25; 86:19–88:19; 92:14–93:17; 100:19–101:11;108:18–110:3;115:21–118:14.

Whereas a competent infringement analysis requires comparison of the patent to the accused device, Mr. Schuler, testified that he only compared the advertised features of Ulead's MediaStudio Pro product to the claims of the patent. Exh. 3 at 22:19–24:15. Regarding Lex's actions to enforce its patents, Haberman admitted that, in general and in this case, Schuler would not only do a preliminary analysis and then Haberman would "take it from there." Exh. 4 at 87:11–88:19. Haberman has testified that he did not pass the Patent Bar Exam and that he is not a member of the U.S.Patent Bar. Exh. 5. As a consequence, Ulead argues that Lex never obtained a competent opinion on whether Ulead's MediaStudio Pro product infringed the '188 Patent. Hokanson Dec. at §§ 10–13.

Accordingly, Ulead asserts that "the cases are clear that a patent infringement plaintiff bears a significant pre-filing investigation burden before asserting a patent claim and that such a burden cannot be fulfilled by merely filing suit on a suspicion of infringement and then asking for discovery to prove up the suspicion." *Nasatka v. Delta Scientific Corp.,* 34 U.S.P.Q.2d (BNA) 1649, 1652, 1994 WL 804525 (E.D.Va.1994), vacated on other grounds, 37 U.S.P.Q.2d (BNA) 1223, 1994 WL 874180 (E.D.Va.1994) (*citing Micro Motion, Inc. v. Kane Steel Co., Inc.* 894 F.2d 1318 (Fed.Cir.1990)). Accordingly, Ulead posits that Lex sued Ulead based solely on incompetent lay investigation and the subjective, uninformed belief of its own president and sole shareholder. Therefore, Ulead contends that this case was frivolous from the start, and should be declared to be exceptional under Section 285.

Lex counters that Mr. Schuler, as the inventor of the patent, was in the best position to evaluate the issue of infringement, which meets the standard for proper pre-filing investigation. Furthermore, Lex asserts that at no time prior to the filing of this action, was the issue of paying small entity fees discussed between the parties. As previously stated, because there was not case law on this specific type of misconduct to put Lex on notice, this Court finds bad faith on Lex's part in defrauding the PTO, but not for engaging in any improper litigation tactics. As such, this Court declines to find that Lex defended Ulead's claim or brought counter-claims in a bad faith during the course of the litigation.

### iii. Vexatious Litigation and Multiplication of Proceedings

Ulead argues that the sole reason Lex has pursued litigation against Ulead was to convince Ulead that it was less expensive to pay for a license than to fight Lex. When the lawsuit in California proved unsuccessful, Lex apparently sued in New York. When Lex failed to obtain a victory in New York, Lex brought in Ulead–Tai-

wan as a party. Lex subsequently threatened litigation in Germany. Ulead posits that such tactics and conduct demonstrate a vexatious strategy, that should not be tolerated, and confirm that this case is "exceptional" within the meaning of Section 285. *See, Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1552 (Fed.Cir.1989) (case found to be exceptional based "on a strategy of vexatious activity" by the losing party). For all of the following reasons, Ulead submits that it has met its burden of proving this case to be exceptional under Section 285.

Lex responds that Ulead's accusations that Lex engaged in litigation misconduct, that there is no infringement and that Lex multiplied the proceedings are false. Lex merely counter-claimed for infringement of the '188 Patent, only one of the eight patents owned by Lex. This was only after Lex's counsel determined there was a reasonable basis for charging Ulead with infringement. The basis for the infringement charge was explained to Ulead's counsel as early as May 5, 1999 during the Local Rule 6 Early Meeting of Counsel. Jacobs Decl. at ¶ 6. Lex asserts that Ulead and its counsel were aware of and reviewed Lex's infringement analysis since at least October 26, 1998. Despite Ulead's allegations of Lex' vexatious conduct and multiplication of proceedings, this Court declines to find that Lex litigated in bad faith. Rather, Lex's motions can be viewed as the active prosecution of its counter-claim against Ulead. The Court does not wish to chill a patent-holder's initiative to actively protect its rights in its patent. Therefore, this Court limits its findings of bad faith to Lex's maintenance of its patent justifying the grant of attorneys' fees under Section 285.

### a. The New York Action

Furthermore, Ulead charges that Lex proliferated the proceedings. Ulead argues that the New York action commenced by Lex was filed "solely to increase Ulead's litigation costs" (Hokanson Decl. at ¶ 14).

Lex responds that the New York action involved other Lex patents and another defendant, Datavision, that resided in New York. The action against Datavision is currently stayed by the New York Judge Preska. In sum, Lex contends that the facts do not support Ulead's request for fees, expenses, and expert fees.

However, Ulead replies that Lex's assertion that the New York action was justified because it involved other Lex patents and another defendant is questionable. As set forth in the moving papers, in January, 2000, Lex filed suit in New York asserting that Ulead–California had infringed four of the nine patents that Lex originally had asserted in 1997. The New York district court dismissed the claims against Ulead on the grounds that they were compulsory counter-claims and should have been filed by Lex in California. The New York district court's Order set forth in the transcript attached as Exhibit A to the Schewe Declaration is instructive.

First, Lex contends that the New York district court found that both actions were "based on the same Ulead software." Tr. 7:4–6. Next, the court found that "the patents are logically related to each other." Tr. 7:15–16. The court also noted that before this action had been filed, Lex had taken the "position that all of the relevant patents were being infringed by Ulead," noting in particular the May 30, 1997, and April 2, 1998 letters. Tr. 7:23–8:8. The court concluded by holding that "the claim by Lex against Ulead in the New York action should be litigated in the California action." Tr. 9:12–14. In response to the dismissal, Lex never sought to have its claims heard here, despite having twice amended its counter-claims since the dismissal. As such, Ulead contends that Lex

has presented no evidence to refute the fact that Lex filed the New York action solely to increase Ulead's litigation costs to cause Ulead to capitulate. The only evidence submitted by Lex addressing the rationale for the filing of the New York action consists of the hearsay statements by Mr. Jacobs, which this Court has excluded in the evidentiary objections. Jacobs Decl. ¶ 24.

While this Court is cognizant of the New York district Court's dismissal of Lex's claims pending this action, this Court finds that it would be improper to award fees in an action filed in another court and usurp that court's discretion to award such costs if it so deemed them proper. This Court finds that the New York court is in a better position to deem whether Lex's bringing of its action in New York was improper, such as to justify the awarding of attorneys' fees or sanctions. Accordingly, this Court declines to award Ulead's attorneys' fees incurred in defending the New York action.

iv. **Lex and Haberman Cannot be Held Jointly and Severally Liable for Ulead's Fees and Costs Under Section 285**

■ Ulead argues that Haberman, as the architect of Lex's decision to commit fraud on the PTO, should also be held responsible for Ulead's fees and expenses. Ulead cites the fact that the Federal Circuit has held that an individual who acts as an agent of a patentee can be held liable for fees under Section 285 "if his conduct supports a finding that the case is exceptional." *Machinery Corp. of America v. Gullfiber AB* 774 F.2d 467, 475 (Fed.Cir. 1985) (*citing Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed.Cir.1984)).[5] Ulead

cites the fact that "[a] corporate officer may be held personally liable for attorneys fees under Section 285 when the officer's active participation in tortious conduct result in a finding of patent unenforceability due to inequitable conduct and the filing or maintaining of a bad faith lawsuit." *See, D.O.C.C., Inc.*, 36 U.S.P.Q.2d at 1158.

However, Ulead's position is untenable. First of all, Haberman must be named a party to the action in order to be liable under Section 285. Unless Ulead were to attempt to amend the complaint at this post-judgment stage to impose sanctions against Haberman personally, there could be no sanctions imposed against him. However, that factual scenario was presented in *Ohio Cellular Products Corp. v. Adams, USA, Inc.*, 175 F.3d 1343 (Fed.Cir. 1999), a patent case assessing attorneys' fees for inequitable conduct, and was squarely reversed by the Supreme Court in *Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) as a violation of due process. (Due process violated by amending judgment to impose liability for fees on individual simultaneously with amendment of pleadings.) The only other means to establish liability against Haberman would be to pierce Lex's corporate veil in order to reach the assets of its sole shareholder. However, Ulead has not asserted such arguments; furthermore, the *Nelson* Court held that "[o]ne-person corporations are authorized by law and should not lightly be labeled sham." *Id.* at 469, 120 S.Ct. at 1586. Based on the Supreme Court precedent directly on point, this Court declines to hold Haberman personally liable under Section 285.

---

**5.** In *Hughes,* the Federal Circuit affirmed an award of fees against a patent owner and the inventor based in part on the inequitable conduct committed by the inventor in conjunction with his attorney, Irving Weiner, the same attorney who assisted Haberman and Lex in defrauding the PTO in this instance. *Hughes,* 724 F.2d at 123–24.

#### b. Ulead is Entitled to Reasonable Attorneys' Fees and Costs As Determined by This Court in the Amount of $470,084.37

##### i. Ulead's Attorneys' Fees As Presented to This Court are Unreasonable

Ulead seeks $640,663.68, which includes the amount sought by Ulead in its bill of costs, plus the fees and expenses incurred on this Motion, as its "reasonable attorneys fees" under Section 285 of the Patent Act, as well as pre-judgment and post-judgment interest thereon.

 "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir.1993) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)); *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511 (2000) (*citing Margolin v. Regional Planning Comm.*, 134 Cal.App.3d 999, 1004–1005, 185 Cal.Rptr. 145 (1982)). Next, in appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation. *See, Intel Corp.*, 6 F.3d at 622; *see also, Sternwest v. Ash*, 183 Cal.App.3d 74, 77, 227 Cal.Rptr. 804 (1986). The *Kerr* factors are:

1. The time and labor required;
2. The novelty and difficulty of the questions;
3. The skill requisite to perform the legal services properly;
4. The preclusion of other employment due to acceptance of the case;
5. The customary fee;
6. The contingent or fixed nature of the fee;
7. The limitations imposed by the client or the case;
8. The amount involved and the results obtained;
9. The experience, reputation, and ability of the attorneys;
10. The undesirability of the case;
11. The nature of the professional relationship with the client;
12. Awards in similar cases.

*See, Kerr*, 526 F.2d at 70. The lodestar amount presumably reflects the novelty and complexity of the issues, the special skills and experience of counsel, the quality of representation, and the results obtained from the litigation. *See, Id.*

Lex, in the declaration of Robert Jacobs, attorney at Beehler & Pavitt and former local patent co-counsel for Lex (with Mr. Pavitt who passed away on January 16, 2001), disputes the reasonableness of the attorneys' fees submitted by Ulead for the following reasons:

(A) Ulead seeks its fees for services as far back as June 1997. Ulead should be denied any fees for services that pre-date the preparation and filing of the Complaint on July 21, 1998 because they are not related to the litigation and outcome of this action. Ulead filed a second Complaint in November 1998 and then dismissed it. Any fees for this second Complaint should also be denied as unreasonable.

(B) Ulead should be denied any fees connected with the preparation and filing of its summary judgment motions for non-infringement and for invalidity due to an alleged lack of enablement. The Court did not rule on either of these motions and

Ulead plainly did not prevail on either of them.

(C) Fees and costs for the New York action should be denied to Ulead. That court should be entitled to handle its docket of cases.

(D) Ulead's fees expended in responding to Lex's discovery requests should also be denied. For the reasons discussed above, Ulead stonewalled discovery and its conduct was responsible for dragging out many of the discovery proceedings in the litigation.

(E) Ulead's fees expended in defending and taking depositions should be denied. Ulead's witnesses were unreasonably evasive and perpetuated the fiction that Ulead–California and Ulead–Taiwan are separate entities to prevent Lex from obtaining meaningful discovery in possession of Ulead–Taiwan, including the source code for Ulead's accused software product. Further, Ulead's counsel improperly instructed at least one Ulead witness, Ms. Liao, to not answer a question in her deposition, thus prolonging the discovery process.

(F) Ulead's request for its expert fees should be denied. Declarant is aware of no agreement to pay the opponent's expert fees for his deposition time.

(G) Ulead's fees in connection with opposing Lex's motions to add parties or to add counter-claims or cross-claims should also be denied. Lex prevailed on those motions. No fees should be awarded to Ulead for opposing those meritorious motions.

*See,* Jacobs Decl., at ¶¶ 25(A) –(G).

Lex also argues, in its Opposition, that expert fees should not be awarded under the Court's inherent power. A specific finding of bad faith must precede any sanction under that authority. *See, Fink v. Gomez,* 239 F.3d 989, 992–993 (9th Cir. 2001).

Furthermore, Lex argues that the Court's inequitable conduct determination related to Lex's incorrectly paying small entity fees, and in no way suggests that Ulead does not infringe the patent in the first instance.

In addition, Lex asserts that most inequitable conduct cases warranting an award of attorneys' fees—including the cases on which Ulead relies—involve conduct with the PTO raising the question of patentability in the first instance, such as concealment of prior art references which could influence the patent examiner's decision whether to issue the patent in the first instance. Such cases support attorney fee awards on the rationale that an accused infringer should not have to defend its conduct related to a patent which never should have issued in the first place. In this case, where the inequitable conduct pertains solely to the failure to pay the correct maintenance fees years after the patent was presumptively validly issued, there is no comparable rationale justifying an attorney fee award. In addition, several cases where attorneys' fees have been denied an accused infringer even, where, as here, the Court has found inequitable conduct by a patentee.

Further, it is neither just nor equitable to award attorneys' fees to Ulead. By invalidating the '188 Patent, the effect of the summary judgment is to deprive Lex of a valuable asset and to insulate Ulead from claims at infringement. Equity does not favor tipping the scales further in Ulead's favor, where the Court has not found Ulead free from fault.

Lex contends that no reported case ever found inequitable conduct on these grounds. Attorney fee awards are appropriate in cases where a litigant or counsel should have known from the outset their

position was unreasonable. Here, Lex argues that the legal effect of incorrectly paying small entity fees was not readily ascertainable. As such, Lex contends that PTO's acceptance of fee correction—as occurred belatedly here—would cure any defect, and not result in invalidation or expiration of the patent citing *Jewish Hosp. of St. Louis v. IDEXX Lab.*, 951 F.Supp. 1, 2 (D.Me.1996). *See also*, 35 U.S.C. § 41(c)(1) ("If the Commissioner accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having expired ...") In sum, Lex contends that neither it or its counsel ought to be sanctioned for litigating this case and arguing that the patent remained valid and unenforceable, notwithstanding an admittedly incorrect payment of small entity fees in the first instance.

However, Lex's arguments regarding mere error in payment of small entity fees is belied by this Court's findings of bad faith and inequitable conduct in maintaining the patent with the PTO. This Court finds that Lex's fraud on the PTO serves as a sufficient basis to grant attorneys' fees. Furthermore, Lex's argument that the PTO's approval of Lex's request to change its status to a large entity (after the onset of litigation and Ulead's Summary Judgment) contradicts the previous findings of this Court that willful blindness at best does not negate bad faith or inequitable conduct.

Accordingly, this Court finds that it would be reasonable for Lex to compensate Ulead for most of Ulead's expenses incurred in litigating the case, except for items "B" (Summary Judgments 2 and 3) and "C" (New York action).

### ii. Expenses for Motions for Summary Judgment 2 and 3 Should be Subtracted as They Were Never Considered by this Court

■ This Court agrees that it would be unreasonable for Lex to have to undertake this expense. Ulead should be denied any fees connected with the preparation and filing of Summary Judgments 2 (non-infringement) and 3 (lack of enablement). These motions were never heard nor considered by this Court in arriving at its judgment, and therefore it would be unreasonable for Lex to compensate Ulead for these expenses. Therefore, this Court will deduct these expenses from the total.

### iii. The Allocation of Expenses for the New York Litigation are Denied as They Should Appropriately be Determined by the New York District Court

■ Likewise, fees and costs for the New York action should be denied. After dismissing Lex's claim of infringement against Ulead, Judge Preska of the New York District Court has stayed the action. That court should be entitled to handle its docket and decide the appropriate disposition of its own cases.

### iv. Attorneys' Hourly Rates

■ Ulead submits the declaration of its counsel, Jon Hokanson, wherein Mr. Hokanson declares that he is familiar with the range of fees charged for similarly qualified and experienced professionals in Los Angeles, relying on "Economic Surveys," periodically prepared by the American Intellectual Property Law Association ("AIPLA Survey"), and published every other year, to determine the billing rates for attorneys based on their degree of experience. *See, View Engineering*, 208 F.3d at 987; *Comark Communications*, 47 U.S.P.Q.2d at 1473; *Mathis*, 857 F.2d at 756; *Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc.*, 51 F.Supp.2d 302, 305 (S.D.N.Y.1999), aff'd, 231 F.3d 1339 (Fed.Cir.2000). It provides the following hourly rates:

1. Jon Hokanson (Partner): $280/hour (1999); $300/hour (2000)

2. Kenneth L. Wilton (Partner January 1, 1999): $250/hour (1999); $280/hour (2000)

3. Jill Schwartz (Associate): $175/hour (1999); $210/hour (2000)

Based on the information provided to this Court, Ulead contends that the hourly rates charged for each of the attorneys who worked on this matter are well within the median and average billing rates for attorneys with like experience in California. Hokanson Decl, ¶¶ 21–27. Based on the AIPLA Survey submitted by Ulead and this Court's knowledge of the prevailing market rates for attorneys with similar experience, this Court agrees and finds that the hourly rates charged by Ulead's attorneys are, indeed, reasonable.

#### v. Hours Expended

As set forth in the Hokanson Decl. ¶¶ 21–28, the hours expended by Ulead's counsel through February 2001, include a breakdown of the following activities involved in litigating this action: conducting investigations including interviewing the inventors of the patent at issue and related patents, conducting and defending depositions, propounding and responding to discovery requests, defending, against Lex's discovery motions, conducting legal research, preparing and prosecuting Ulead's successful Motion for Summary Judgment and preparing and filing Ulead's two other potentially dispositive Motions for Summary Judgment. Ulead provides the billing statements in support of these hours. Though Ulead acknowledges that Ulead's counsel's invoices do not reflect the total number of hours spent by each attorney on this matter, Ulead posits that the total amount of costs and fees is reasonable, particularly in light of Mr. Haberman's conduct and the results obtained.

Relying again on the AIPLA Survey, Ulead notes that in 1999, the median cost of a patent infringement suit through the end of discovery was $1,050,000. Exh. 11. The 25th Percentile of such costs was $725,000, meaning that 75% of the patent cases surveyed cost more than that amount. Here, the total fees and costs expended by Ulead's counsel was only $640,663.68, well below the median and below the 25th Percentile. Ulead argues that these fees and costs are reasonable. *See, Johnson & Johnston Associates, Inc. v. R.E. Services Co., Inc.,* 1998 U.S.Dist. Lexis 20235 22 (N.D.Cal.1998) (awarding full amount of fees requested where total fell below the median fees and expenses found in AIPLA survey).

In opposition, Lex specifically challenges the following fees set forth in Paragraphs "A" through "G." Lex claims that the hours are unreasonable. As explained above, this Court reduces Ulead's fees by the amount of $23,246 for item "B," as Motions for Summary Judgment 2 and 3 were not considered nor dispositive to this Court's grant of Motion No. 1 for Summary Judgment. In addition, the Court declines to add the fees and costs incurred in New York for $47,526.59 for the aforementioned reasons. Lex does not challenge the specific amount of hours spent on various items as being excessive or unreasonable.

As such, this Court finds that a reduction of hours for Summary Judgment Motions 2 and 3 is warranted, and subtracts the following amount of $23,246 from Ulead's total. "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Meister v. Regents of the University of California,* 67 Cal.App.4th 437, 447–48, 78 Cal. Rptr.2d 913 (1999) (internal citations omitted).

After a review of the billing statements and based on this Court's first-hand

knowledge of the litigation of this action, this Court awards Ulead fees and costs pursuant to Section 285 (only) as set forth below in the final calculation.

### vi. Final Calculation

Subtracting $23,246 from $491,702.53, reduces the total attorneys' fees for the California litigation to $468,456.53.

Section 285 Fees and Costs:

| | |
|---|---|
| Attorneys Fees in California: | $468,456.53 |
| Costs in California: [6] | $ 1,627.84 |
| Total: | $470,084.37 |

**3. This Court Denies Ulead's FRCP 26(b)(4)(B) Request for Expert Fees for $13,975**

■ Ulead requests $13,975 for Lex's use of its expert, Mr. Barker in connection with his deposition. However, Lex responds that Ulead never compensated Lex for deposing Mr. Schuler. Schewe Decl, Exh. "C," (supporting declaration of Mr. Schuler regarding non-payment of his expert fees). As such, this Court does not find such compensation to be warranted in this instance.

**4. This Court Declines to Impose Rule 11 Sanctions against Lex This Case Based on Ulead's Allegations that Lex Failed to Conduct A Meaningful Prefiling Investigation**

■ Ulead requests that this Court grant Rule 11 Sanctions so that it may recover $76,670.70,[7] in addition to the total fees.

As previously stated, Ulead proffers that Lex never obtained a competent opinion regarding the issue of infringement. Instead, Ulead contends that Lex relied on the lay "investigation" of one of the co-inventors of the patent, Chester Schuler, who is not an attorney and admitted that he used no rule of law in his "investigation" of the infringement issue. *See*, Hokanson Decl., §§ 10–13.

Therefore, Ulead contends that this case was frivolous from the start, and should be declared to be exceptional under Section 285, and sanctionable under the Rule 11 of the Federal Rules of Civil Procedure.

Lex counters that Ulead's fee request under Federal Rule of Civil Procedure 11 should be denied. Lex contends that Ulead's request violates Rule 11's express safe harbor provision and violates the holding in *Barber v. Miller*, 146 F.3d 707 (9th Cir.1998). Lex avers that Rule 11 Sanctions have been granted where there was no basis for filing the action and the prevailing party moved for non-infringement early in the litigation, not some one and a half years later after extensive written and deposition discovery as in this instance.

This Court agrees, in light of the fact that Ulead has not followed the procedure of Rule 11 and asserts this request after the entry of judgment. For example, Ulead has not specified which motion has been filed in violation of Rule 11 and has failed to allow Lex to withdraw that motion within 21 days before bringing a motion for Rule 11 sanctions. This Court finds that such an award would be unwarranted and excessive under these specific circumstances.

---

**6.** This Court finds no basis to award expert witness fees either under FRCP 26(b)(4)(B) or Rule 11.

**7.**

| | |
|---|---|
| Total Costs (Including Expert Witness Fees): | $78,298.54 |
| Costs (Excluding Expert Witness Fees): | − $ 1,627.84 |
| Expert Witness Fees: | $76,670.70 |

### 5. This Court Declines to Impose 28 U.S.C. § 1927 Sanctions against Lex and its Counsel, Haberman for Vexatious Litigation and Multiplication of Proceedings

■ Ulead argues that the sole reason Lex has pursued litigation against Ulead was to convince Ulead that it was less expensive to pay for a license than to fight Lex. When the lawsuit in California proved unsuccessful, Lex apparently sued in New York. When Lex failed to obtain a victory in New York, Lex brought in Ulead–Taiwan as a party. Lex subsequently threatened litigation in Germany. Ulead posits that such tactics and conduct demonstrate a vexatious strategy, that should not be tolerated, and confirm that this case is "exceptional" within the meaning of Section 285. *See, Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1552 (Fed.Cir.1989) (case found to be exceptional based "on a strategy of vexatious activity" by the losing party). For all of the following reasons, Ulead submits that it has met its burden of proving this case to be exceptional under Section 285.

Lex responds that Ulead's accusations that Lex engaged in litigation misconduct, that there is no infringement and that Lex multiplied the proceedings are false. Lex merely counter-claimed for infringement of the '188 Patent, only one of the eight patents owned by Lex. This was only after Lex's counsel determined there was a reasonable basis for charging Ulead with infringement. The basis for the infringement charge was explained to Ulead's counsel as early as May 5, 1999 during the Local Rule 6 Early Meeting of Counsel. Jacobs Decl. at ¶ 6. Lex asserts that Ulead and its counsel were aware of and reviewed Lex's infringement analysis since at least October 26, 1998. Despite Ulead's allegations of Lex' vexatious conduct and multiplication of proceedings, this Court finds evidence of bad faith in Lex's maintenance of its patent justifying the grant of attorneys' fees solely under Section 285. This Court does not find that Lex conducted its litigation in such a manner as to warrant additional sanctions against Mr. Haberman in his role as Lex's counsel.

### a. The New York Action

As previously discussed, Ulead charges that Lex proliferated the proceedings. Ulead argues that the New York action commenced by Lex was filed "solely to increase Ulead's litigation costs" (Hokanson Decl. at ¶ 14).

Lex responds that the New York action involved other Lex patents and another defendant, Datavision, that resided in New York. The action against Datavision is currently stayed by the New York Judge Preska. In sum, Lex contends that the facts do not support Ulead's request for fees, expenses, and expert fees.

However, Ulead replies that Lex's assertion that the New York action was justified because it involved other Lex patents and another defendant is questionable. As set forth in the moving papers, in January, 2000, Lex filed suit in New York asserting that Ulead–California had infringed four of the nine patents that Lex originally had asserted in 1997. The New York district court dismissed the claims against Ulead on the grounds that they were compulsory counter-claims and should have been filed by Lex in California. The New York district court's Order set forth in the transcript attached as Exhibit A to the Schewe Declaration is instructive.

This Court finds that the New York court is in a better position to deem whether Lex's bringing of its action in New York was improper, such as to justify the awarding of attorneys' fees or sanctions. As such, this Court declines to award

Ulead's attorneys' fees incurred in defending the New York action.

Furthermore, Lex asserts that there is no basis for sanctions under 28 U.S.C. § 1927 or any other authority. Lex claims that it and Mr. Haberman, litigated this case in good faith. Section 1927 applies to "excess" costs, expenses and fees, yet Ulead asks for all its fees, without any required showing what actions were allegedly "excessive." This Court finds that Lex's counter-claims against Ulead were not so devoid of merit as to support a finding of vexatiousness or multiplication of proceedings. As such, this Court **denies** Ulead's Motion for Attorneys' Fees on this basis as it is unwarranted and would result in a double recovery for Ulead.

### III. *Conclusion*

Based on the foregoing discussion, the Court hereby **grants** Plaintiff Uleads' Motion for Attorneys' Fees pursuant to 35 U.S.C. Section 285 and costs in the amount of $468,456.53 and $1,627.84, respectively, for a total of **$470,084.37.**

**IT IS SO ORDERED.**